UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

STANLEY T. BRAZIL, JR.,

                Petitioner,                                    Case No. 07-20531
                                                          Honorable Thomas L. Ludington

v.

UNITED STATES OF AMERICA,

                Respondent.

_____/

**OPINION AND ORDER PARTIALLY ADOPTING REPORT AND
RECOMMENDATION, PARTIALLY OVERRULING PETITIONER'S OBJECTIONS,
PARTIALLY GRANTING PETITIONER'S MOTION TO AMEND, DENYING
PETITIONER'S RULE 59 MOTION, AND DENYING THE GOVERNMENT'S
MOTION TO STRIKE**

      Stanley Brazil filed an amended motion to vacate his sentence pursuant to 28 U.S.C. §
2255.  Since that time, the docket has become choked with filings from Brazil, his counsel, and
the government: motions, responses, replies to responses, objections, and more motions.  The
following pages seek to address all the pending docket entries.  Notably, Brazil's amended
motion to vacate his sentence will be denied on each ground he raises save two, and an
evidentiary hearing will be scheduled to address those two claims.

**I**

      On November 14, 2007, a federal grand jury returned a multi-count indictment that
charged Brazil (as one of ten defendants) with conspiracy to distribute and possess with intent to
distribute 50 grams or more of cocaine base, commonly known as crack cocaine.  Brazil was also
charged with two counts of possession with intent to distribute 50 grams or more of cocaine
base.  The government filed a notice of penalty enhancement, pursuant to 21 U.S.C. § 851, on
February 5, 2008 (indicating Brazil's previous felony drug conviction).  *See* Notice of Enhance.

1, ECF No. 73.  Brazil's trial began on September 16, 2008, and the jury returned a verdict of guilty on the two counts of possession that were tried.[1]  Brazil's trial counsel was Carl Marlinga.

Brazil was sentenced on April 17, 2009—after his sentencing hearing was continued from April 13, 2009—to two concurrent terms of 380 months' imprisonment.  Attorney O'Farrell represented Brazil on both of those dates.  Mr. O'Farrell continued to represent Brazil on appeal, and on April 23, 2009, Brazil (through Mr. O'Farrell) filed a notice of appeal concerning his sentence and conviction.  The Sixth Circuit Court of Appeals affirmed both on August 30, 2010.  *See United States v. Brazil*, 395 F. App'x 205, 208 (6th Cir. 2010).  Brazil filed a petition for a writ of certiorari, which was denied on January 24, 2011.

Brazil then engaged Jolene Weiner-Vatter and Anastase Markou, legal counsel, to represent him.  On January 24, 2012, Brazil filed a motion with this Court seeking to vacate his sentence under 28 U.S.C. § 2255.  This motion was signed by both Weiner-Vatter and Markou.  It was referred to United States Magistrate Judge Charles E. Binder pursuant to 28 U.S.C. § 636(b)(1)(B).  Judge Binder struck the motion from the docket because it did not adhere to the Eastern District of Michigan's Local Rules.  *See* Feb. 1, 2012 Order, ECF No. 288.  Brazil filed an amended motion, signed by Markou alone, on February 22, 2012.  Subsequently, Brazil filed a pro se motion to amend the amended motion to vacate.

On January 29, 2013, Judge Binder issued a report recommending that both Brazil's amended motion to vacate his sentence and his motion to amend be denied.  *See* Report & Rec. 1, ECF No. 322.  Markou filed timely objections on Brazil's behalf, *see* Pet'r's Obj., ECF No. 323, and the government then responded to those objections.

---

[1] On September 15, 2008, the day before trial, the government moved to dismiss Count 1 of the superceding indictment (the conspiracy count) in order to "narrow the issues presented at trial and conserve judicial resources."  *United States v. Brazil*, 395 F. App'x 205, 208 (6th Cir. 2010).

Brazil then took it upon himself to file an additional pro se motion pursuant to Rule 59(e). The motion, directed at Judge Binder's report, requests that this Court "alter or amend the Magistrate's order . . . and correct the manifest injustice committed by the Magistrate Judge." Pet'r's Rule 59 Mot. 1, ECF No. 327. Four days later, on March 5, 2013, the government moved to strike Brazil's Rule 59 motion.

## II

### A

Before the Court can proceed, a threshold issue must be addressed. Brazil is currently represented by counsel, at least Mr. Markou, who filed the amended motion to vacate Brazil's sentence under 28 U.S.C. § 2255. After the government responded to that motion, Mr. Markou filed a reply brief on Brazil's behalf. And once Judge Binder issued a report recommending the motion to vacate be dismissed, Mr. Markou filed timely objections. At this time, Brazil has made no indication he is dissatisfied with Mr. Markou's performance.

After the amended motion to vacate was filed, however, Brazil filed two motions on his own behalf, "proceeding Pro Se[.]" Pet'r's Mot. 1, ECF No. 318; Pet'r's Rule 59 Mot. 1. The first motion comes pursuant to Federal Rule of Civil Procedure 15(a)(2), in which Brazil requests leave to "[s]upplement his § 2255 motion[.]" Pet'r's Mot. 1. The second seems to be directed toward Judge Binder's report and recommendation, despite Mr. Markou's previously filed objections, wherein Brazil requests that the Court "alter or amend the Magistrate's order . . . denying [Brazil's] § 2255 motion and Amended Motion and correct the manifest injustuce [sic] committed by the Magistrate Judge." Pet'r's Rule 59 Mot. 1.

But the Sixth Circuit has established that it is not appropriate to address pro se arguments raised by an individual who is also represented by counsel. *United States v. Williams*, 641 F.3d

758, 770 (6th Cir. 2011); *see also United States v. Martinez*, 588 F.3d 301, 328 (6th Cir. 2009) ("Martinez raises a number of additional pro se claims, but we decline to address them because he is represented by counsel."); *United States v. Howton*, 260 F. App'x 813, 819 (6th Cir. 2008) ("Howton raises a number of arguments in his pro se brief. We decline to address these arguments because Howton was represented by counsel in this matter."). As noted in *Moore v. Haviland*, 531 F.3d 393, 401–02 (6th Cir. 2008), the right to counsel and the right to self-representation "are mutually exclusive, and invocation of one is necessarily intertwined with waiver of the other."

Accordingly, Brazil does not have the right to engage counsel to represent him and then file *pro se* motions and briefs as well. Such "hybrid representation" has the effect of complicating and prolonging legal proceedings to the "detriment . . . of the judicial system because there is a queue waiting for attention." *United States v. Oreye*, 263 F.3d 669, 673 (7th Cir. 2001).

**B**

Moreover, even if Brazil's two pro se motions are considered on their merits, all but one issue he advances fail as a matter of law. In his motion to supplement his amended motion to vacate, filed November 2, 2012, Brazil raises six different claims. The four claims Brazil raises in his Rule 59(e) motion are all duplicative of arguments from his motion to amend. Each issue Brazil raises is addressed below.[2]

**1**

First, Brazil asserts that both Mr. Marlinga (trial counsel) and Mr. O'Farrell (appellate counsel) rendered constitutionally ineffective representation when they failed to raise a *Batson*

---

[2] As will be discussed, an evidentiary hearing will be conducted concerning Brazil's claim of ineffective assistance of counsel for failing to raise a *Batson* challenge at trial and on direct appeal. Each of Brazil's other pro se arguments is meritless.

challenge after the government struck the "only two" prospective African-Americans from the venire panel.  *See* Pet'r's Mot. 2–4; Pet'r's Rule 59 Mot. 7–10.  Indeed, Brazil indicates that he asked Mr. Marlinga "why was [sic] the only two Black People summons [sic] for the jury not on my jury," Pet'r's Mot. 2, yet Mr. Marlinga never objected.  Brazil also claims that he "instructed" Mr. O'Farrell to raise the *Batson* claim on direct appeal, but Mr. O'Farrell refused. *Id*. at 3.

To be clear, in his motion to amend and his Rule 59 motion, Brazil is not making the *Batson* objection.  Instead, he is raising ineffective assistance of counsel claims, concerning both Mr. Marlinga (trial counsel) and Mr. O'Farrell (appellate counsel), for not raising the *Batson* challenge at trial or on direct appeal.  So while the claims are obviously related (as the ineffective assistance of counsel claims hinge on the *Batson* challenge), the Sixth Circuit has explained that "the two claims are analytically distinct."  *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005).  And although Brazil has procedurally defaulted on his *Batson* challenge, the Supreme Court "has made clear that claims of ineffective assistance of trial counsel may be raised for the first time on collateral review under § 2255."  *Howard v. United States*, 485 F. App'x 125, 129 (6th Cir. 2012) (citing *Massaro v. United States*, 538 U.S. 500, 505 (2003)).  Accordingly, both of Brazil's ineffective assistance of counsel claims may be raised at this point of the proceedings.

To prevail on a claim of ineffective assistance of counsel, Brazil must satisfy the familiar *Strickland* standard by demonstrating that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The Court must "indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional

assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged conduct might be considered sound . . . strategy." *Id*. at 689.  In assessing deficient performance, "reviewing courts must take care to avoid 'second-guessing' strategic decisions that failed to bear fruit." *Lundgren v. Mitchell*, 440 F.3d 754, 769–70 (6th Cir. 2006) (quoting *Strickland*, 466 U.S. at 689).  And, importantly, even if Brazil shows counsel's performance was deficient, he must then demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result . . . would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Although Mr. Marlinga and Mr. O'Farrell represented Brazil at different points in the case, their performances are both measured against *Strickland*.  As to Mr. Marlinga, Brazil must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Sanders v. Curtin*, No. 11-1712, 2013 WL 3214962, at *12 (6th Cir. June 26, 2013) (quoting *Kinnard v. United States*, 313 F.3d 933, 935 (6th Cir. 2002)).  In other words, this Court "should look to whether the seriousness of counsel's errors deprived the defendant of a fair trial." *Sanders*, No. 11-1712, 2013 WL 3214962, at *12 (citing *Kinnard*, 313 F.3d at 935).  "A court is free to 'dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice,' as opposed to first determining whether counsel's performance was deficient." *Sanders*, No. 11-1712, 2013 WL 3214962, at *12 (quoting *Strickland*, 466 U.S. at 697).  Notably, counsel cannot have been ineffective for failing to raise meritless objections. *See Seymour v. Walker*, 224 F.3d 542, 556 (6th Cir. 2000) (citation omitted).

To demonstrate ineffective assistance of appellate counsel, Brazil must first show "deficient performance," which means he must demonstrate that Mr. O'Farrell made an "objectively unreasonable decision" to omit the *Batson* claim. *Moore v. Mitchell*, 708 F.3d 760, 792 (6th Cir. 2013) (citing *Webb v. Mitchell*, 586 F.3d 383, 399 (6th Cir. 2009)). Brazil must then demonstrate that Mr. O'Farrell's deficiency prejudiced him, which requires a showing that there was "a reasonable probability that, but for his counsel's unreasonable failure to raise this issue on appeal, he would have prevailed." *Moore*, 708 F.3d at 792 (internal quotation marks omitted) (quoting *Webb*, 586 F.3d at 399). As with trial counsel, "appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit." *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).

It follows that, even assuming both attorneys performed deficiently (a finding the Court is not ready to make), Brazil's ineffective assistance of counsel claims are without merit if he cannot demonstrate prejudice. Thus, if his underlying *Batson* claim is frivolous, both of his ineffective assistance claims fail. This is so because "the failure to raise a meritless *Batson* challenge could not have prejudiced the defense." *Mitchell v. Rees*, 36 F. App'x 752, 754 n.4 (6th Cir. 2002) (finding ineffective assistance of counsel claims were without merit because underlying *Batson* claim was meritless).

Concerning *Batson* challenges, the Sixth Circuit has established the following:

A *Batson* challenge entails three distinct and sequential steps: (1) the opponent of the peremptory strike must make a prima facie case that the challenged strike was based on race; (2) the burden then shifts to the proponent of the peremptory challenge to articulate a race-neutral explanation for the strike; (3) finally, the trial court must determine whether the opponent of the peremptory strike has proven purposeful discrimination.

*United States v. McAllister*, 693 F.3d 572, 578 (6th Cir. 2012) (collecting cases).

- 7 -

To establish a prima facie case—and thus satisfy step one—the party challenging the peremptory strike must demonstrate three requirements: (1) that he is a member of a cognizable racial group; (2) that a peremptory challenge was employed to remove a juror of the defendant's race; and (3) that these facts, along with other relevant circumstances, raise an inference that the proponent of the peremptory challenge used the challenge to exclude a prospective juror because of his or her race. *Id*. at 578–79 (citations omitted).

Here, Brazil is a member of a cognizable racial group: he is African-American. Second, at least according to Brazil, peremptory challenges were employed by the government to remove the two potential jurors that were also African-American. Accordingly, all that remains of Brazil's prima facie case is demonstrating an inference that the challenges were used to strike the jurors *because* they were African-American.

On this point, *McAllister* is particularly helpful. That case involved an African-American defendant and two peremptory challenges during voir dire to remove prospective jurors that were also African-American. *Id*. at 579. Upon those facts, the Court of Appeals established that "[s]triking both prospective African–American jurors raise[s] the inference of racial discrimination, thus satisfying the third element of a prima facie case." *Id*. Based on his version of events, Brazil has likewise met his prima facie burden.

Unlike *McAllister*, however, the government did not "state its reasons for striking . . . the only two African-American potential jurors," *id*., because no objection was raised at trial. Thus, the Court has no record indicating whether two African-Americans were actually removed from the jury venire after peremptory strikes by the government. So the only way to proceed is to conduct an evidentiary hearing, where Brazil must demonstrate that the government exercised

two peremptory challenges against African-American panel members.[3]   If successful, the government will have the opportunity to proffer a race-neutral explanation for striking the two African-American individuals.   Norman Donker was the Assistant United States Attorney assigned to the case, and because he was the alleged proponent of the peremptory strikes, it will fall to him to indicate a race-neutral explanation (should there be one).[4]

Regardless of whether the government offers a sufficient race-neutral explanation for striking the only two African-Americans from Brazil's venire panel, if Brazil satisfies his prima facie case, the Court will determine whether purposeful discrimination has been demonstrated.[5] The Supreme Court has described purposeful discrimination as "finding of fact" that "largely will turn on evaluation of credibility." *Batson*, 476 U.S. at 98 n.21.   To be clear, it is Brazil's burden to "prove[] purposeful racial discrimination." *Johnson v. California*, 545 U.S. 162, 168 (2005) (quoting *Purkett v. Elem*, 514 U.S. 765, 767 (1995) (*per curiam*)).   His burden requires proof of "purposeful discrimination by a preponderance of the evidence[.]" *United States v. Harris*, 15 F. App'x 317, 322 (6th Cir. 2001).

If Brazil demonstrates purposeful discrimination by a preponderance of the evidence, the Court will address whether counsel's failure to raise the *Batson* claim (having concluded the

---

[3] As a part of his prima facie burden, Brazil must "produc[e] evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred." *Johnson v. California*, 545 U.S. 162, 170 (2005). Accordingly, Brazil must produce evidence sufficient to raise the inference that two African-American panel members were removed with peremptory strikes by the government.

[4] As discussed by the Ninth Circuit in *Paulino v. Harrison*, 542 F.3d 692, 699–701 (9th Cir. 2008), when the government does "not have an independent recollection of [the] actual reasons for striking the jurors in question," *id*. at 700, offering "conjecture and speculation about the reasons for [the] strikes" will be "insufficient" to meet the government's burden of production at step two, *id*. at 701.  The failure to put forward an actual reason, or the bare "assertion of bad memory, is evidence of discrimination." *Id*. at 702 (quoting *Yee v. Duncan*, 463 F.3d 893, 900 (9th Cir. 2006).

[5] "A failure to provide an explanation for exercising a strike does not relieve the trial court of its responsibility at step three to make the ultimate determination of whether there has been purposeful discrimination." *Paulino v. Harrison*, 542 F.3d 692, 702 (9th Cir. 2008) (quoting *Yee v. Duncan*, 463 F.3d 893, 901 (9th Cir. 2006)); *see also Johnson v. California*, 545 U.S. 162, 171 (2005) (the burden of persuasion "rests with, and never shifts from, the opponent of the strike. . . . The first two *Batson* steps govern the production of evidence that allows the trial court to determine the persuasiveness of the defendant's constitutional claim.").

claim is meritorious), constituted constitutionally ineffective assistance.  If the *Batson* claim is without merit, however, both of Brazil's related ineffective assistance of counsel claims will be dismissed.

**2**

With his second pro se argument, Brazil indicates that "trial counsel was constitutionally ineffective for failing to object to the government presenting some one other than the actual person who conducted the Lab Reports to determine that the substance was crack cocaine.  Mr. Brazil had a Sixth Amendment right to Confront the person who actually performed the Lab Reports."  Pet'r's Mot. 4; *see also* Pet'r's Rule 59 Mot. 2–7.  As will be demonstrated, two chemists determined the substances involved in this case to be crack cocaine; both chemists testified.  The evidence—the crack cocaine itself—was offered during their testimony.  And, importantly, Mr. Marlinga subjected each witness to cross examination.  Brazil's argument is misplaced.

Brazil notes that he was convicted based upon "128.12 grams" of cocaine base (crack cocaine).  *See* Pet'r's Mot. 7.  He then argues that Mr. Marlinga was "constitutionally ineffective" because there was no objection to the government offering the cocaine through someone "other than the actual person who conducted the Lab Reports to determine that the substance was crack cocaine."  *Id*. at 4 (citation omitted).  As Brazil explains more thoroughly in his Rule 59 motion, "[t]he chemist who performed the lab report was not unavailable and nor did Petitioner have a prior opportunity to cross-examine the chemist."  Pet'r's Rule 59 Mot. 3 (citation omitted).  He also asserts that the cocaine[6] "was unconstitutionally introduced through Agent Todd Bowden."  *Id*.

---

[6] Brazil actually argues that the "laboratory Report" was entered through Agent Bowden.  But no laboratory reports were entered, either during Bowden's testimony or during the forensic chemists'.  Accordingly, the Court

Judge Binder accepted Brazil's initial arguments at face value, and simply agreed in his report that "the lab reports identifying the substances purchased as cocaine were introduced into evidence during the testimony of ATF Agent Bowden."  Report & Rec. 15 (citation omitted). Judge Binder went on to conclude, however, that counsel was not ineffective for failing to object, or that "any error was harmless since Brazil did not challenge the identity of the substance distributed."  *Id*. at 16.

During trial, however, Agent Bowden testified that government's exhibit 110 contained "crack cocaine" that he received during a controlled buy.  Trial Tr. vol. I, at 103, ECF No. 238. He also indicated that government's exhibit 111 was a bag containing approximately "71.1 grams" of a drug-related substance.  *Id*. at 118–19.  Notably, neither exhibit was entered during Agent Bowden's testimony.  He simply laid a chain of custody to authenticate them.

Instead, the government called Elaine Dougherty, a drug analyst with the Michigan State Police (and employed at the Bridgeport Forensic Laboratory), to offer exhibit 110.  *Id*. at 124. Ms. Dougherty explained that she "received one sealed plastic packaged [sic] that had another sealed plastic package inside it.  Then inside of that was a chunky material."  *Id*. at 127.  The government then offered exhibit 110 into evidence—during Ms. Dougherty's examination, not Agent Bowden's.  *See id*.  Ms. Dougherty indicated that the baggie (exhibit 110) contained "60.02 grams."  *Id*. at 128.  She testified that she "proceeded with . . . chemical tests" to confirm that the substance was "crack cocaine."  *Id*.  She also testified extensively about the process she utilized to identify the substance.  *Id*. at 128–32.  Mr. Marlinga then cross-examined her extensively.  *See id*. at 132–38.

---

will address Brazil's argument as it relates to the evidence that was admitted—two baggies containing a substance that was identified to be cocaine base.

Then the government offered Jerome Waldron's testimony, another "forensic chemist" from the Michigan State Police Crime Lab in Bridgeport. *Id*. at 139. He testified concerning exhibit 111, which was offered during his testimony; again, not Agent Bowden's. *See id*. at 141. Mr. Waldron explained that the contents of exhibit 111 were 68.1 grams, *id*. at 142, of "crack cocaine or cocaine base," *id*. at 145. Like his counterpart Ms. Dougherty, Mr. Waldron was then cross examined by Mr. Marlinga on Brazil's behalf. *Id*. at 145–46.

Accordingly, the 128.12 grams of cocaine base that supported Brazil's conviction were offered by forensic chemists from the Michigan State Police lab, who confirmed the substances to be crack cocaine, and described the testing methods they used to form those conclusions. Both were then cross examined. Brazil's argument that his constitutional rights were violated because he was unable to "confront the author of the laboratory Report" is without merit.

### 3

In a similar vein to his *Batson* challenge, Brazil indicates that he did not receive a fair trial because "98% of [prospective] jurors were European-Americans," as "there were only 'two African-American' prospective jurors, out of approximately 70-Jurors that were summon[ed]." Pet'r's Mot. 5; *see also* Pet'r's Rule 59 Mot. 11–12. Of course, Brazil's argument is based upon his right to be tried by a "fair cross section" of his community. *See Taylor v. Louisiana*, 419 U.S. 522, 530 (1975).

In *Duren v. Missouri*, 439 U.S. 357 (1979), the Supreme Court established that a defendant may establish a prima facie fair cross-section violation by showing

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Id.* at 364; *see also United States v. Allen*, 160 F.3d 1096, 1103 (6th Cir. 1998). While Brazil has satisfied the first prong of the *Duren* test, he has not satisfied the other two.

There are 21 counties that make up the Northern Division of the Eastern District of Michigan (and from which Brazil's jury was drawn). Based on 2012 census estimates, those 21 counties combine for a total of 866,459 residents.[7] The census data also indicates that approximately 47,752 of those residents are African-American.[8] Thus, the northern division boasts a population (866,459) that is roughly 5.5% African-American (47,752).

So, out of the approximately 70 potential jurors Brazil claims were in his venire panel, one would expect approximately 4 (3.85 to be exact) African-Americans if the venire statistically matched the northern division's jury pool. The two potential jurors that Brazil remembers, if accurate, represent a "fair and reasonable" number in relation to "the number of such persons in the community." Moreover, the method established by the Eastern District's juror selection plan has repeatedly been held to pass constitutional scrutiny. *See*, *e.g.*, *United States v. Montgomery*, No. 04–20046, 2012 WL 32673, at *2 (E.D. Mich. Jan. 6, 2012); *United States v. Riddle*, 691 F. Supp. 2d 737, 742 (E.D. Mich. 2010); *United States v. Bates*, No. 05–81027, 2009 WL 5033928

---

[7] Alcona County–10,635; Alpena County–29,234; Arenac County–15,477; Bay County–106,935; Cheboygan County–25,835; Clare County–30,753; Crawford County–14,009; Gladwin County–25,484; Gratiot County–42,063; Huron County–32,463; Iosco County–25,357; Isabella County–70,617; Midland County–83,822; Montmorency County–9,476; Ogemaw County–21,437; Oscoda County–8,592; Otsego County–24,020; Presque Isle County–13,129; Roscommon County–24,106; Saginaw County–198,353; Tuscola County–54,662. Data *available at* United States Census Bureau: Michigan, http://quickfacts.census.gov/qfd/states/26000.html (last visited Sept. 19, 2013).

[8] 2012 census estimates indicates the African-American populations for each county are as follows: Alcona County–.2% (out of 10,635); Alpena County–.4% (out of 29,234); Arenac County–.3% African (out of 15,477); Bay County–1.7% (out of 106,935); Cheboygan County–.6% (out of 25,835); Clare County–.6% (out of 30,753); Crawford County–.6% (out of 14,009); Gladwin County–.4% (out of 25,484); Gratiot County–5.8% (out of 42,063); Huron County–.5% (out of 32,463); Iosco County–.6% (out of 25,357); Isabella County–2.6% (out of 70,617); Midland County–1.3% (out of 83,822); Montmorency County–.3% (out of 9,476); Ogemaw County–.3% (out of 21,437); Oscoda County–.3% (out of 8,592); Otsego County–.4% (out of 24,020); Presque Isle County–.5% (out of 13,129); Roscommon County–.5% (out of 24,106); Saginaw County–19.4% (out of 198,353); Tuscola County–1.2% (out of 54,662). Data *available at* United States Census Bureau: Michigan, http://quickfacts.census.gov/qfd/states/26000.html (last visited Sept. 19, 2013).

(E.D.Mich. Dec.15, 2009), *aff'd on other grounds*, 363 F. App'x 369 (2010).  Finally, even if Brazil could satisfy the second element (which he has not), he offers nothing to demonstrate "systematic exclusion."

Because there is no merit to Brazil's "fair cross-section" claim, his counsel cannot have been ineffective for failing to raise such an objection.  This claim will be denied.

### 4

Next, Brazil alleges that Mr. O'Farrell, both at sentencing and then again on appeal, was ineffective "for failing to object to the government/PSI attributing Criminal History Category points for his misdemeanor offenses, offenses that did not involve a term of imprisonment of at least thrity [sic] days."  Pet'r's Mot. 6 (citation omitted); *see also* Pet'r's Rule 59 Mot. 13.  This issue, however, was addressed by the Sixth Circuit during Brazil's direct appeal.  The court indicated that "the district court committed no error . . . in enhancing Brazil's sentence on the basis of a prior conviction for drug possession."  *United States v. Brazil*, 395 F. App'x 205, 223 (6th Cir. 2010).  Therefore, Brazil is barred from bringing the claim here: "It is equally well settled that a § 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law."  *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999) (collecting cases).  Brazil offers, and the Court is aware of, no such exceptional circumstances.  This claim is without merit.

### 5

So, too, is Brazil's next pro se argument, which appears only in his motion to amend (Pet'r's Mot.).  Brazil argues that both Mr. Marlinga and Mr. O'Farrell were ineffective because they did not object to the Court "engag[ing] in independent fact-finding" to conclude that

Brazil's sentence should take into consideration additional amounts of cocaine as "relevant conduct." Pet'r's Mot. 8. As before, this issue was addressed by the Sixth Circuit on direct appeal, and therefore Brazil is procedurally barred from asserting it now. The court established that "the district court committed no error in hearing additional testimony from Bowden regarding relevant conduct[.]" *Brazil*, 395 F. App'x at 223. The Sixth Circuit also established that, regarding this Court's "relevant conduct determination," there was no error because "the court based its determination on evidence of specific drug transactions between Brazil and five cooperating defendants[.]" *Id*. at 222.

**6**

The final argument contained in Brazil's pro se motions is that the court "clearly erred when it struck [his] initial § 2255 motion from the record[.]" Pet'r's Mot. 10. The motion was struck because it did not conform with the Local Rules (as it was more than double the allowable page limit). *See* Feb. 1, 2012 Order, ECF No. 288. Importantly, even if striking the original motion to vacate was erroneous, it was harmless. Brazil was given a full month to rectify the inconsistencies and file a motion that conformed to the local rules. *Id*. His suggestion that the Court "deem [his] initial § 2255 motion as a timely Rule 15(a)(1) motion" is without foundation. Because Brazil's motion was stricken without prejudice to his refiling an amended motion to vacate his sentence—which he did, this time represented by counsel—Brazil's arguments on this point are without merit.

**C**

Having concluded that one of Brazil's pro se arguments may have merit, the Court will partially grant his motion to amend his amended motion to vacate. Brazil's claim—that trial and appellate counsel were constitutionally ineffective for failing to raise the *Batson* challenge—will

be considered further upon an evidentiary hearing.  A "district court is required to grant a hearing to determine the issues and make findings of fact and conclusions of law 'unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Briggs v. United States*, 187 F. App'x 540, 542 (6th Cir. 2006) (brackets omitted) (quoting 28 U.S.C. § 2255).  If Brazil's *Batson* challenge has merit upon review, it is possible his related ineffective assistance of counsel claims will too.  It follows that an evidentiary hearing, on this issue at least, is warranted.

Each of the other arguments Brazil raises, however, are without merit.  Aside from the *Batson* issue, his motion to amend will be denied.  Because Brazil's Rule 59 motion is duplicative, it will be denied in its entirety.

### III

Now, at this point, what remains are the materials filed on Brazil's behalf by current counsel and those filed by the government in opposition: Brazil's amended motion to vacate his sentence, the government's response, Brazil's reply, Judge Binder's report and recommendation concerning the motion to vacate, Brazil's objections to that report, and the government's response to those objections.

In the objections he filed to Judge Binder's report, Brazil notes (rather, his counsel does) the following arguments from his amended motion to vacate: (1) trial counsel was constitutionally ineffective for introducing the entrapment defense; and (2) Brazil was denied his Sixth Amendment right to effective counsel at sentencing.  Pet'r's Obj. 1–2, ECF No. 323. Brazil then "objects to the Magistrate's report and Recommendation on these issues."  *Id*. at 2. Brazil also objects to the portion of Judge Binder's report recommending that the November 2, 2012 pro se motion to amend be denied.  *Id*.  Notably, Brazil's counsel asserts that each

argument Brazil raises should be considered *except* the ineffective assistance of counsel claims related to the *Batson* challenge. As discussed above, however, each of those arguments is without merit. Brazil's objection as it relates to his pro se papers will be overruled.

That leaves Brazil's arguments that Mr. Marlinga was ineffective for introducing the entrapment defense and that Brazil was denied effective representation during sentencing by Mr. O'Farrell. Both issues are addressed in turn. The claims will be analyzed pursuant to the *Strickland* standard established above for adjudicating claims of ineffective assistance of counsel.

**A**

Brazil first attacks the performance of trial counsel, Mr. Marlinga. Brazil claims that "trial counsel was ineffective by raising an entrapment defense and, in doing so, opened the door to detrimental testimony." Pet'r's Obj. 3. Brazil also raised this argument on direct appeal before the Sixth Circuit. That court indicated as follows:

> Brazil's fourth argument is that his trial counsel rendered ineffective assistance by raising an entrapment defense and so opening the door to detrimental testimony from Roxie Burton regarding Brazil's predisposition to engage in drug trafficking. To demonstrate that his counsel's performance was constitutionally deficient, Brazil must show that it "fell below an objective standard of reasonableness" and that it prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688–89 (1984). Such a claim is ordinarily deferred until post-conviction proceedings under 28 U.S.C. § 2255, when an evidentiary hearing can be held to ascertain whether counsel's conduct was motivated by sound strategy. *See Warman*, 578 F.3d at 348 ("As a general rule, a defendant may not raise ineffective-assistance-of-counsel claims for the first time on direct appeal, since there has not been an opportunity to develop and include in the record evidence bearing on the merits of the allegations.") (quoting *United States v. Martinez*, 430 F.3d 317, 338 (6th Cir. 2005)). Accordingly, we dismiss this claim; should he choose to do so, Brazil may bring it under 28 U.S.C. § 2255.

*United States v. Brazil*, 395 F. App'x 205, 220 (6th Cir. 2010). Brazil acknowledges the Sixth Circuit's dismissal of his claim, and asserts that "the 6th Circuit has clearly recognized an exception when 'the record is adequately developed to allow the Court to properly assess the

- 17 -

merits of the issue.'" Pet'r's Obj. 4 (quoting *United States v. Williams*, 612 F.3d 500, 508 (6th Cir. 2010); citing *United States v. Wynn*, 663 F.3d 847, 850 (6th Cir. 2011)). He concludes that because the Sixth Circuit did not take up his argument, "a further evidentiary record [is] needed before a decision [can] be reached." Pet'r's Obj. 4.

The government's brief from before the Sixth Circuit substantiates Brazil's claim. In its Appellee brief, the government indicated as follows:

> The record is devoid of any evidence indicating the rationale for selecting the defense or its manner of presentation. It could certainly be argued that entrapment was the only viable defense given the overwhelming physical evidence against defendant. However, given the absence of evidence specifically addressing counsel's performance, it cannot be determined whether the defense asserted was a reasoned trial strategy. The issue is not ripe for review.

Br. for Appellee at 23–24, *United States v. Brazil*, 395 F. App'x 205, 220 (6th Cir. Oct. 7, 2009) (citing *United States v. Lopez-Medina*, 461 F.3d 724, 737 (6th Cir. 2006)). The government cannot argue on appeal that there is not sufficient evidence to address Brazil's claim, and then argue now that "[t]he record shows trial counsel was very well aware of the relevant law, the facts of this case and the consequences of raising the entrapment defense, and also that he had a carefully considered trial strategy." Resp't Resp. Obj. 10, ECF No. 326.

Accordingly, the forthcoming evidentiary hearing will concern not only whether Brazil's *Batson* challenge has merit, but also whether Mr. Marlinga's use of the entrapment defense was "motivated by a sound strategy." *Brazil*, 395 F. App'x at 220. Notably, Brazil bears "the heavy burden of demonstrating that counsel made an error so serious that he was not functioning as counsel guaranteed by the Sixth Amendment and that this deficient performance prejudiced his defense." *Lewis*, 11 F.3d at 1352. Counsel's conduct must be assessed "as of the time it was taken," and the Court must "determine whether the challenged acts or omissions were outside the 'wide range of professionally competent assistance. The court should recognize that counsel is

strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (ellipsis and brackets omitted) (quoting *Strickland*, 466 U.S. at 690).

## B

The second argument Brazil's counsel presents concerns the performance of Mr. O'Farrell, Brazil's counsel during sentencing and on direct appeal. Through his objections, Brazil raises the following issues: (1) Mr. O'Farrell was "ineffective in utterly failing to assert that the Relevant Conduct guidelines . . . should either have been completely ignored in this matter, or given such little weight that Mr. Brazil's sentence was more proportionate to those sentenced nationally and to the co-defendants in this case." Pet'r's Obj. 8. (2) "The Magistrate ignored that Mr. Brazil's sentence was disproportionate to recognized sentences found in published federal reports." *Id*. at 13. (3) "The Co-Defendants in this case all received substantially lower sentences than Mr. Brazil, despite having comparable criminal histories." *Id*. at 14. (4) "The Magistrate also made no specific findings that this Honorable Court actually was presented with and considered other 3553 factors, including deterrence." *Id*. at 16.

## 1

The first issue, at best a vague attempt to undermine the Court's consideration of relevant conduct, is without merit. Brazil claims that "prior counsel was ineffective in utterly failing to challenge the application of the Relevant Conduct to Mr. Brazil's guideline calculation where this particular guideline was not promulgated and amended by the Sentencing Commission in the exercise of its characteristic and institutional role." Pet'r's Obj. 11–12.

Judge Binder noted the obscure nature of this argument, and attempted to "constru[e] Brazil's arguments with the cases [he] cited[.]" Report & Rec. 8. Judge Binder then indicated

that "it appears that Brazil is arguing that counsel should have objected to the court's reliance on

the relevant conduct guideline when the court could have rejected the guideline based on policy

grounds." *Id.*  Brazil does not take issue with this construction in his objections, and so the

Court will likewise consider Brasil's argument as stated by Judge Binder.

In *United States v. Culverhouse*, 507 F.3d 888 (5th Cir. 2007), the Fifth Circuit laid out

how relevant conduct considerations impact the sentence of a drug offender:

> A defendant convicted of a drug offense is sentenced based on the amount of
> drugs involved in the offense, with quantities of drugs from multiple transactions
> added together.  *See* U.S. Sentencing Guidelines Manual ("USSG") § 2D1.1,
> application note 6 (2001).  The guidelines provide that, in determining the amount
> of drugs to be attributed for a base offense level, the district court may consider
> other offenses than those underlying the offense of conviction as long as the
> offenses constitute relevant conduct as defined in the guidelines.  *See id.* § 1B1.3.
> The guidelines define "relevant conduct" to include "all acts and omissions . . .
> that were part of the same course of conduct or common scheme or plan as the
> offense of conviction."  *Id.* § 1B1.3(a)(2).  An offense need not have resulted in a
> conviction to constitute relevant conduct under the guidelines, but the conduct
> must be criminal.  *See United States v. Anderson*, 174 F.3d 515, 526 (5th
> Cir.1999).

*Id.* at 895.  In *United States v. Gill*, 348 F.3d 147, 153 (6th Cir. 2003), the Sixth Circuit

established that considering relevant conduct is appropriate so long as it is "relevant" to the

charged offenses.  In that case, the petitioner argued that relevant conduct "cannot be counted in

the total drug quantity for the purpose of U.S.S.G. § 2D1.1(c)."  *Id.* at 154.  The court "rejected"

the argument, and held that "[c]ertain uncharged conduct may be considered as 'relevant

conduct' under the Sentencing Guidelines."  *Id.* at 154–55 (collecting cases).

It follows that this Court was permitted to consider relevant conduct for purposes of

scoring Brazil's drug quantity.  *See United States v. Nassar*, 373 F. App'x 564, 567 (6th Cir.

2010) ("the district court did not treat the Guidelines as mandatory; it simply agreed with them.

There is no error in that."); *Kimbrough v. United States*, 552 U.S. 85, 91 (2007).  That Mr.

O'Farrell did not object to the Court's consideration of relevant conduct is therefore of no

moment because the failure to present arguments that are without merit cannot be the basis of ineffective assistance under *Strickland*.  *See Mapes v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999) ("Counsel could not be unconstitutionally ineffective for failing to raise these meritless arguments.").

Moreover, although Mr. O'Farrell did not object in the manner Brazil now suggests was necessary, he filed numerous objections to the presentence report.  Among them was an objection "relat[ing] to the question of the propriety of Court's consideration of a number of the transactions to be utilized for purposes of considering the base offense level both because they were not considered by a jury and because the defendant would contend they are not relevant conduct."  Apr. 13, 2009 Hr'g Tr. 5.  At sentencing, counsel was given the floor and he indicated that Brazil's convictions involved a total of "128 grams of cocaine base" with a corresponding offense level of 30.  *Id*. at 7.  Mr. O'Farrell indicated that "[t]he position of the presentence report is that my client would be a level 38."  *Id*.  He then objected to the relevant-conduct evidence, stating that "it violates my client's right to jury trial to now come in."  *Id*. at 8.

Thus, Brazil's argument that "prior counsel was ineffective in utterly failing to challenge the application of the Relevant Conduct to Mr. Brazil's guideline calculation," Pet'r's Obj. 11–12, is baseless.  Mr. O'Farrell did contest application of Brazil's relevant conduct, only for different reasons than Brazil raises now.  The fact that counsel chose to object on alternate grounds, as opposed to challenging the propriety of the relevant conduct guidelines, does not render his representation constitutionally deficient.  *See Griffin v. United States*, 204 F. App'x 792, 795 (11th Cir. 2006) (Counsel's failure to object to the district court's calculation of the drug-quantity base offense level was not ineffective assistance of counsel when counsel objected

to the calculation on other grounds, but failed to object on the same grounds successfully raised in co-defendant's appeal).

More importantly, however, the Court did not err in considering relevant conduct when sentencing Brazil. Any objection to the contrary is meritless, and thus, counsel at sentencing was not constitutionally ineffective for failing to raise the point. Brazil's motion to vacate will be denied as it relates to this issue.

**2**

Brazil also challenges Mr. O'Farrell's performance because he did not raise the issue of sentencing disparity based on the average sentence for a "cocaine offender in the Federal system[.]" Pet'r's Obj. 13. Brazil emphasizes that in 2007, the average offender received "84.4 months," and that his "sentence of 380 months was 450 percent" greater than that average. *Id.* Brazil notes that counsel did not object to his sentence on these grounds.

However, 18 U.S.C. § 3553(a)(6) provides that, when imposing a sentence, a court should consider "the need to avoid unwarranted sentence disparities among defendants with *similar* records who have been found guilty of *similar* conduct." *Id.* (emphasis added). As the government persuasively points out in its response to Brazil's objections, Brazil does not claim that his sentence was disparate when compared to those with similar records found guilty of similar conduct. He only complains that his sentence is more than four times greater than the national average. But the fact that Brazil did not receive the national average is not at all surprising—his offense level score (accounting for relevant conduct) was 38, the highest offense level contemplated by the Sentencing Guidelines manual for controlled substances. *See* U.S. Sentencing Guidelines Manual § 2D1.1(c). Brazil received a longer sentence than the average

cocaine offender because his crimes warranted such a sentence. The failure to make this meritless objection certainly was not ineffective assistance.

Moreover, the citation Brazil provides for his underlying data (the average 2007 sentence for cocaine offenders), actually refers to the United States Sentencing Commission's 2010 Annual Report.[9] The 2010 report indicates that the average prison term for crack cocaine offenders was 111 months, not less than 85, further undermining Brazil's argument. His motion to vacate is denied on this ground.

**3**

Next, Brazil argues that Mr. O'Farrell was ineffective when he did not object to the disparity between Brazil's sentence and those of his co-defendants. But such an argument finds no support in the law—§ 3553(a)(6) is not concerned with comparing sentences between one individual and another, even when the two are co-defendants. *United States v. Simmons*, 501 F.3d 620, 623 (6th Cir. 2007); *United States v. LaSalle*, 948 F.2d 215, 218 (6th Cir. 1991); *United States v. Parker*, 912 F.2d 156, 158 (6th Cir. 1990)). Rather, "Subsection 3553(a)(6) is concerned with national disparities among the many defendants with similar criminal backgrounds convicted of similar criminal conduct." *Id.*; *see also United States v. Poynter*, 495 F.3d 349, 351–56 (6th Cir. 2007). The purpose is "to ensure nationally uniform sentences among like offenders so as to leave room to depart downward for those defendants who are truly deserving of leniency." *Simmons*, 501 F.3d at 624 (citing *Poynter*, 495 F.3d at 351–56; *United States v. Borho*, 485 F.3d 904, 910 (6th Cir. 2007); *United States v. Husein*, 478 F.3d 318, 331, 333–34 (6th Cir. 2007)). That Brazil's co-defendants received shorter sentences than he did is simply irrelevant. Mr. O'Farrell was not ineffective for failing to raise this argument.

---

[9] *See* http://www.ussc.gov/Research_and_Statistics/Annual_Reports_and_Sourcebooks/2010/ar10toc.htm (last visited September 23, 2013).

**4**

Finally, Brazil indicates that Mr. O'Farrell should have constructed some argument related to deterrence based on his age at release. He explains as follows:

> For those released between the ages of 45-49, the rate of being reconvicted is less than 30 percent, while the rate of being sent back to prison is less than 17 percent. Even if Mr. Brazil had received a fifteen (15) year sentence, he would have been over forty-five (45) years old when released, given that Mr. Brazil was 32 years of age at sentencing. Prior counsel utterly failed to present any evidence or even argue that a sentence resulting in Mr. Brazil's release after the age of forty-five (45) would greatly reduce the risk he would re-offend.

Pet'r's Obj. 17. Brazil's current counsel goes on to indicate that "[p]rior counsel did not even question at sentencing how a sentence of 360 months or more would be instrumental in deterring similar future criminal conduct by others." *Id*. at 18.

To begin, based on Mr. Brazil's offense score and criminal history category, the *minimum* possible term was "20 years incarceration[.]" Apr. 13, 2009 Hr'g Tr. 3. Accordingly, even if the minimum sentence was imposed, Brazil would have been 52 at the time of his release. His claim that sentencing counsel was ineffective because he failed to argue for a sentence that would end when Brazil was between 45 and 49 is entirely illogical. Brazil has not shown deficient performance, or resulting prejudice, and his argument on this point fails.

Regarding the Court's discussion of § 3553(a) factors during sentencing, the Court finds no error, and thus the lack of an objection cannot be ineffective assistance. The Supreme Court has made clear that a district court may exercise discretion in determining how much explanation is necessary when considering § 3553(a) factors, and that "when a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation." *Rita v. United States*, 551 U.S. 338, 356 (2007). A district judge need only "set forth enough to

satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Id.* at 357.

It is apparent from the transcript here that the Court did consider the mitigating factors in Brazil's favor. After allocution, the Court indicated "[a] couple of observations as I examine at least the 3553 A factors that I indeed believe weigh in favor of the defendant." Apr. 17, 2009 Hr'g Tr. 86, ECF No. 242. The Court acknowledged Brazil's personal drug abuse stemming from "early in his life." *Id.* The Court also emphasized Brazil's positive relationships with his children, which the Court described as "to some degree extraordinary." *Id.* at 87. However, the factors that were "clearly the most compelling" were "the relative seriousness of the offense . . . and the question of the protection of the public and the provision of adequate deterrence." *Id.* The Court emphasized that Brazil "is a gentleman that has stood at the wholesale level of the distribution of very large quantities of controlled substances in a matter of some gravity to many, many, many users that he would have supplied." *Id.* Then, "after careful consideration of the sentencing guidelines and weighing with some care the sentencing factors that are included in Title 18 USC Section 3553 A," the Court imposed concurrent sentences of 380 months. *Id.* at 87–88.

Noted above, a within-guidelines sentence does not require a lengthy explanation of § 3553(a) factors. *See Rita*, 551 U.S. at 356. The sentence the Court imposed on Brazil (380 months' imprisonment) was within his "recommended guideline range of between 360 months to life." Apr. 17, 2009 Hr'g Tr. 82. The Court's explanation of why concurrent sentences of 380 months were imposed was sufficient to explain the Court's "reasoned basis for exercising [its] own legal decisionmaking authority." *Rita*, 551 U.S. at 357. Again, an objection on this ground

would be meritless, and counsel cannot have been constitutionally ineffective for failing to raise such an argument.  Brazil's motion will be denied on this ground as well.

## IV

For clarity's sake, the Court will outline the issues that remain pending.  Brazil's motion to vacate his sentence will be denied regarding all issues he has raised save two: first, his claim that trial and appellate counsel were ineffective for failing to raise the *Batson* challenge; and second, Brazil's contention that trial counsel was ineffective for presenting the entrapment defense.  An evidentiary hearing will be conducted concerning whether Brazil's *Batson* challenge has merit.  If it does, the Court will then determine whether trial and appellate counsel were constitutionally deficient for failing to raise the claim.  If it does not, counsel cannot have been ineffective for failing to raise the claim, and Brazil's related challenges will be dismissed.

The evidentiary hearing will also involve trial counsel's decision to pursue the entrapment defense.  Based on the evidence solicited at the hearing, the Court will determine whether utilizing the defense was motivated by a sound, tactical strategy or was simply ineffective assistance of counsel.

The Court will direct the parties to file supplemental papers before the evidentiary hearing identifying the relevant assertions of fact each party plans to present, as well as the manner in which that evidence will be presented.  In their papers, the parties must indicate all the witnesses they plan to call, outline each witness's anticipated testimony, and estimate the time necessary for each witness's direct examination.  Additionally, the parties' papers must identify any documents that need to be exchanged before the hearing.  Following the parties' briefing, a pre-evidentiary hearing conference will be conducted to identify a workable date for the evidentiary hearing itself.

**V**

Accordingly, it is **ORDERED** that Judge Binder's report and recommendation, ECF No. 322, is **ADOPTED** in part and **REJECTED** in part.

It is further **ORDERED** that Brazil's objections to Judge Binder's report and recommendation, ECF No. 323, are **SUSTAINED** in part and **OVERRULED** in part.

It is further **ORDERED** that Brazil's motion to amend, ECF No. 318, is **GRANTED** in part and **DENIED** in part.

It is further **ORDERED** that Brazil's Rule 59 motion, ECF No. 327, is **DENIED**.

It is further **ORDERED** that the government's motion to strike, ECF No. 328, is **DENIED** as moot.

It is further **ORDERED** that Brazil is **DIRECTED** to file *one* supplemental brief, as outlined above, by **October 25, 2013**.

It is further **ORDERED** that the government is **DIRECTED** to file its supplemental brief by **November 22, 2013**.

It is further **ORDERED** that the parties are **DIRECTED** to participate in a telephonic status conference on **December 9, 2013** at **2:30 p.m.**  Counsel for Brazil is **DIRECTED** to initiate the call at that time.

Dated: October 1, 2013

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 1, 2013.

s/Tracy A. Jacobs
TRACY A. JACOBS