UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

STANLEY T. BRAZIL, JR.,

       Petitioner,                              Case No. 07-20531
                                                                 Honorable Thomas L. Ludington

v.

UNITED STATES OF AMERICA,

       Respondent.
       _____/

**OPINION AND ORDER DISMISSING *BATSON* CLAIM AND SCHEDULING EVIDENTIARY HEARING ON ENTRAPMENT DEFENSE CLAIM**

Stanley Brazil is currently serving a 380-month sentence for distributing crack cocaine. On February 22, 2012, Brazil filed an amended motion to vacate his sentence under 28 U.S.C. § 2255. Although Brazil alleged numerous constitutional violations, *see* Pet'r's Am. Mot., ECF No. 292, each was rejected save two, *see* Oct. 1, 2013 Op. & Order 26, ECF No. 333. Brazil's remaining claims are as follows: (1) trial counsel was ineffective because he did not raise a *Batson* challenge during voir dire and appellate counsel was ineffective for failing to raise the issue on appeal; and (2) trial counsel was ineffective for presenting an entrapment defense at trial. *Id.*

Since October 2013, the Court and counsel have worked to discern if an evidentiary hearing is warranted on Brazil's remaining claims. Based on what follows, Brazil's first claim of error—that trial and appellate counsel were ineffective for failing to raise a *Batson* challenge during voir dire and on appeal—will be dismissed. On the other hand, an evidentiary hearing is warranted on Brazil's second claim, which concerns his entrapment defense.

**I**

The facts underlying Brazil's case have been set forth on numerous occasions.  *See United States v. Brazil*, 395 F. App'x 205, 208–13 (6th Cir. 2010); Jan. 29, 2013 Report & Rec. 2–4, ECF No. 322; Oct. 1, 2013 Op. & Order 1–3.  So only the facts necessary to this opinion will be reproduced here.

Brazil was charged, by indictment, with conspiring to distribute "50 grams or more of cocaine base, commonly known as crack cocaine," and two counts of knowingly distributing "50 grams or more of a substance containing cocaine base (crack cocaine) . . . ."  Indictment 2, 10, 11, ECF No. 3.  A first superseding indictment added counts against some of Brazil's nine co-defendants, but the three counts against him remained the same.  *See* Super. Indictment 1–2, 10, 11, ECF No. 41.  On September 15, 2008, the government moved to "dismiss Count one of the first superseding indictment"—the conspiracy count—"to narrow the issues presented at trial and conserve judicial resources."  Resp't's Mot. Dismiss 1, ECF No. 166.  The motion was granted, and Brazil went to trial on charges that he unlawfully distributed more than 50 grams of crack cocaine on two discrete occasions.

**A**

Brazil's trial began on September 16, 2008, with the selection of his petit jury.  Brazil was represented at trial by Carl Marlinga.  After each prospective juror was seated and questioned, the Court inquired if the government had any challenges "for cause."  Voir Dire Tr. 61, ECF No. 334.  The government had "[n]one."  *Id*.  The Court then moved to peremptory challenges. The government first asked that "Juror No. 1, Miss LaLonde" be excused.  *Id*. at 61–62.  The Court did so.  With its next peremptory challenge, the government asked the Court "to thank and excuse Juror No. 5, Mr. Mattson."  *Id*. at 69.  The Court then excused Mr. Mattson.

With its third peremptory challenge, the government asked that "Juror No. 12, Miss Sanders" be excused. *Id*. at 76.

At that point, after the government exercised its third peremptory challenge on Miss Sanders, Mr. Marlinga (Brazil's counsel) requested a sidebar. Mr. Marlinga established that there was "only one African-American" member in Brazil's jury venire—Miss Sanders—and she was "excused in a peremptory challenge." *Id*. at 77. Mr. Marlinga indicated he was "concerned" that the only minority member of the venire was excused in this manner, and he wanted "to note [his] objection." *Id*.

The Court then asked the government to explain "the exercise of [its] peremptory" challenge on Miss Sanders. Counsel for the government explained, "[s]he said she was very close to her brother and she didn't agree with drug penalties." *Id*. Miss Sanders's brother was "incarcerated" by the State of Michigan due to drug offenses. *Id*. at 26. After a short recess, the Court summarized the issue:

> Just to sum up, we had a challenge based on the fact we had a single African-American party that was seated on the jury. Indeed, it was a single African-American on the panel. The government has exercised a peremptory. The challenge has been made by the defense, and I think the present showing has been at least established under the *Batson* procedure by the offering of the objection. The government's response has offered a racially-neutral justification for the exercise of the peremptory. . . . So in that respect, I believe the gentleman has offered a racially-neutral explanation for the exercise of the peremptory challenge and I would respectfully overrule the challenge.

*Id*. at 79–80. After the Court overruled Mr. Marlinga's objection, Miss Sanders was excused. *Id*. at 80.

The government asked that the next juror seated be excused for cause, and when Mr. Marlinga raised no objections, the juror was excused. *Id*. at 94. The government used two more peremptory challenges to excuse potential jurors "Mr. Battle" and "Mr. Piontkowski." *Id*. at

104, 109. At that point, the government was "satisfied with the panel." *Id*. at 116. Because Mr. Marlinga and Brazil were also "satisfied with this jury[,]" voir dire concluded. *Id*.

**B**

During Brazil's trial, on cross examination of the government's third witness (ATF Agent Tom Bowden), Mr. Marlinga raised an entrapment defense. Without admitting that Brazil had committed a crime, Mr. Marlinga indicated "that Brazil would never have engaged in any criminal activity had the police not sought to entrap him." *Brazil*, 395 F. App'x at 211. Of course, as it goes with the entrapment defense, this line of inquiry "opened the door for the government to demonstrate that Brazil was predisposed to commit the crime of drug trafficking. [Mr. Marlinga] acknowledged as much, stating: 'I know I've opened up the door to other information that the agent may have about Mr. Brazil and drug dealing.'" *Id*. (citation omitted). As forewarned, Mr. Marlinga's line of inquiry allowed Bowden, on redirect examination, to testify regarding Brazil's role in a Saginaw gang notorious for drug trafficking (the Sunnyside Gang).

**II**

To prevail on his claims of ineffective assistance of counsel, Brazil must satisfy the familiar *Strickland* standard by demonstrating that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The Court must "indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged conduct might be considered sound . . . strategy." *Id*. at 689. In assessing deficient performance, "reviewing courts must take care to avoid 'second-guessing'

strategic decisions that failed to bear fruit." *Lundgren v. Mitchell*, 440 F.3d 754, 769–70 (6th Cir. 2006) (quoting *Strickland*, 466 U.S. at 689). And, importantly, even if Brazil shows counsel's performance was deficient, he must then demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result . . . would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

### III

Brazil's two remaining claims are (1) his trial and appellate counsel were ineffective for failing to pursue the *Batson* claim, and (2) his trial counsel was ineffective for raising the entrapment defense. Each issue will be addressed in turn.

### A

Brazil's ineffective assistance of counsel claim—based upon trial counsel's alleged failure to raise a *Batson* challenge during voir dire—was not previously dismissed because the voir dire transcript was not available for review. Brazil alleged that not one, but two potential African-American jurors were struck by the government with peremptory challenges. Based on "his version of events," the Court concluded that Brazil had "met his prima facie burden" on his *Batson* claim. Oct. 1, 2013 Op. & Order 8.

The voir dire transcript, however, tells a different story. First, only one potential African-American juror was struck with a peremptory challenge; indeed, as Mr. Marlinga made clear, there was only one potential African-American juror in the entire venire. More importantly, Mr. Marlinga raised the very objection that Brazil now claims should have been made, arguing that *Batson* had been violated where the government peremptorily struck the only potential African-

American juror in Brazil's venire. Accordingly, Brazil's claim that Mr. Marlinga was ineffective for failing to raise a *Batson* objection is plainly without merit.

And as the Court noted in the October 2013 Opinion and Order, "if [Brazil's] underlying *Batson* claim is frivolous, both of his [related] ineffective assistance claims fail"—including his claim against appellate counsel. *Id*. at 7. This is so because "the failure to raise a meritless *Batson* challenge could not have prejudiced the defense[,]" *Mitchell v. Rees*, 36 F. App'x 752, 754 n.4 (6th Cir. 2002), and a lack of prejudice renders an ineffective assistance claim meritless, *Sanders v. Curtin*, 529 F. App'x 506, 519 (6th Cir. 2013) (establishing that demonstrating prejudice is required for a successful ineffective assistance of counsel claim). Here, Brazil's underlying *Batson* challenge is meritless, and so too is his claim that appellate counsel was ineffective for not raising the issue.

The Sixth Circuit has established three sequential steps for addressing a *Batson* challenge:

> A *Batson* challenge entails three distinct and sequential steps: (1) the opponent of the peremptory strike must make a prima facie case that the challenged strike was based on race; (2) the burden then shifts to the proponent of the peremptory challenge to articulate a race-neutral explanation for the strike; (3) finally, the trial court must determine whether the opponent of the peremptory strike has proven purposeful discrimination.

*United States v. McAllister*, 693 F.3d 572, 578 (6th Cir. 2012) (collecting cases). And even assuming Brazil can satisfy a prima facie showing that Miss Sanders was struck because of her race,[1] the government provided a satisfactory race-neutral explanation for its decision to challenge her presence on the jury. *See* Voir Dire Tr. 77 (the government explaining that Miss Sanders was excused because "[s]he said she was very close to her brother and she didn't agree

---

[1] The Sixth Circuit has explained that "[o]nce a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue[] of whether the defendant has made a prima facie showing becomes moot." *United States v. McAllister*, 693 F.3d 572, 579 (6th Cir. 2012) (citation omitted).

with drug penalties" and because Brazil's charges involved drugs). This explanation readily satisfies the test for a race-neutral rationale, which "need not be particularly persuasive or plausible." *McAllister*, 693 F.3d at 579 (collecting cases). In fact, "unless a discriminatory intent is inherent in the [proponent's] explanation, the reason offered will be deemed race neutral." *Id*. (citation omitted). Because racial discrimination is not inherent in Miss Sanders's previous involvement with the legal system or her aversion to drug penalties, the government's explanation is race-neutral for *Batson* purposes.

At the third step of the *Batson* inquiry, the trial court "has a duty to assess whether the opponent of the strike has met its burden to prove purposeful discrimination. The judge must assess the plausibility of the proponent's race-neutral reason in light of all evidence with a bearing on it." *Id*. at 580 (citations omitted). Here, this Court concluded that Miss Sanders "reflected the fact she was very close with her brother. He—she also reflected the fact that she had strong opinions about the penalties that were associated with his conviction. . . . So in that respect, I believe the gentleman has offered a racially-neutral explanation for the exercise of the peremptory challenge and I would respectfully overrule the challenge." Voir Dire Tr. 79–80. The Court did not accept the prosecutor's rendition of the facts. Instead, the Court found that the prospective juror may be biased given her past experience with drug crimes and the associated penalties and "ultimately conducted a constitutionally sufficient *Batson* analysis." *McAllister*, 693 F.3d at 581.

Because Mr. Marlinga raised a *Batson* challenge during voir dire, he cannot have been ineffective for failing to do so. Moreover, the Court adequately addressed Brazil's *Batson* challenge—based on Mr. Marlinga's objection—and found it to be without merit. Appellate counsel cannot have been ineffective for failing to raise a meritless objection. *Willis v. Smith*,

351 F.3d 741, 745 (6th Cir. 2003) (citation omitted). Accordingly, Brazil cannot establish prejudice associated with his *Batson*-based ineffective assistance claim. No evidentiary hearing is warranted; the claim will be denied.

**B**

Brazil also challenges Mr. Marlinga's employment of the entrapment defense at trial. Brazil originally raised this claim on direct appeal, but the Sixth Circuit refused to address it. *See Brazil*, 395 F. App'x at 220 (Ineffective assistance of counsel claims are "ordinarily deferred until post-conviction proceedings under 28 U.S.C. § 2255, when an evidentiary hearing can be held to ascertain whether counsel's conduct was motivated by sound strategy. . . . Accordingly, we dismiss this claim; should he choose to do so, Brazil may bring it under 28 U.S.C. § 2255."). Based on the Sixth Circuit's guidance, Brazil raised his ineffective assistance claim concerning the entrapment defense when he filed his § 2255 motion. He now argues that an evidentiary hearing is necessary to address the issue.

As Brazil emphasizes, § 2255 establishes that a court "shall . . . grant a prompt hearing" concerning a motion to vacate "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." § 2255(b). Here, the record does not "conclusively" show that Brazil is not entitled to relief, and his request for an evidentiary hearing will be granted.

Under *Strickland*, a defendant claiming ineffective assistance of counsel must show that counsel's actions were not supported by a reasonable strategy and that the error was prejudicial. *Massaro v. United States*, 538 U.S. 500, 505 (2003). "If the alleged error is one of commission," as with Brazil's claim here, "the record may reflect the action taken by counsel but not the reasons for it." *Id*. As a result, the Supreme Court instructed that a court addressing an

ineffective assistance claim "may take testimony from witnesses for the defendant and the prosecution and from the counsel alleged to have rendered the deficient performance" in order to develop sufficient facts to decide the issue. *Id.* And, as indicated above, an evidentiary hearing is *required* unless "the record conclusively shows that the petitioner is entitled to no relief." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (citation omitted).

As a part of his supplemental briefing on this claim, Brazil offered an affidavit from a prominent defense attorney, John Minock, who opines that "the strategy of asserting the defense of entrapment . . . in this case wasnot [sic] professionally reasonable." Minock Aff. ¶ 13, *attached as* Pet'r's First Supp. Br., ECF No. 356. This came after the government secured an affidavit from Brazil's trial counsel, Mr. Marlinga, who indicated that he introduced the entrapment defense because "there was no other viable way to defend the case against Mr. Brazil." Marlinga Aff. ¶ 5, *attached as* Resp't's First Supp. Br., ECF No. 340. Indeed, Mr. Marlinga maintains that "[t]he fact that Mr. Brazil was convicted does not mean that the entrapment defense was not his best chance for acquittal." *Id*. ¶ 6.

Brazil asserts that he should be "permitted to cross-examine Mr. Marlinga about the factual investigation he undertook before and during trial related to the efficacy of raising the entrapment defense." Pet'r's Second Supp. Br. 6, ECF No. 359. Of course, the entrapment defense is a "limited" defense, *see United States v. Russell*, 411 U.S. 423, 435 (1973); it is "not easily established," *United States v. Maguire*, No. 03-141, 2009 WL 6327678, at *3 (S.D. Ohio Nov. 4, 2009), because it comes into play "only when the Government's deception actually implants the criminal design in the mind of the defendant," *United States v. Johnson*, 855 F.2d 299, 303 (6th Cir. 1988). So although Mr. Marlinga established his belief that entrapment was

Brazil's only viable defense in this case, Brazil is entitled to cross-examine Mr. Marlinga on the issue to determine whether Mr. Marlinga's decision was well-informed and reasonable.

Notably, to succeed on his claim, Brazil must demonstrate not only that Mr. Marlinga's decision to present the entrapment defense constituted ineffective assistance, but that had Mr. Marlinga foregone the defense, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694. These issues can be addressed during an evidentiary hearing before the Court renders its final conclusions.

The government does not want an evidentiary hearing on Brazil's entrapment defense claim. It argues, not without justification, that "[t]he files and records have fully developed the facts in this matter and conclusively show that Brazil is entitled to no relief." Resp't's Second Supp. Br. 3, ECF No. 360. This argument, or at least the latter half, aligns with the Sixth Circuit's opinion on the matter, which indicated that during Brazil's trial the government presented "overwhelming evidence of guilt . . . through the testimony of law enforcement personnel and Brazil's own associate and through video and audio recordings of Brazil participating in drug sales." *Brazil*, 395 F. App'x at 223.

And yet, although it was authorized to do so, the Sixth Circuit did not resolve Brazil's entrapment defense claim. Instead, it directed Brazil to assert his claim as a part of a § 2255 motion "when an evidentiary hearing can be held to ascertain whether counsel's conduct was motivated by a sound strategy." *Id*. at 220. Although the government now claims that the record before this Court "conclusively show[s] that Brazil is entitled to no relief[,]" it made the exact opposite argument during Brazil's direct appeal. In its Appellee brief, the government emphasized that the record—which has only been supplemented by two affidavits since—was not sufficient to address Brazil's entrapment defense claim:

> The record is devoid of any evidence indicating the rationale for selecting the defense or its manner of presentation. It could certainly be argued that entrapment was the only viable defense given the overwhelming physical evidence against defendant. However, given the absence of evidence specifically addressing counsel's performance, it cannot be determined whether the defense asserted was a reasoned trial strategy. The issue is not ripe for review.

Br. for Appellee at 23–24, *United States v. Brazil*, 395 F. App'x 205, 220 (6th Cir. Oct. 7, 2009) (citing *United States v. Lopez-Medina*, 461 F.3d 724, 737 (6th Cir. 2006)). It is disingenuous for the government to argue on direct appeal that the record was *not* sufficient to review Brazil's claim, and now with an abrupt about face assert that a nearly identical record *is* sufficient to review the claim. The addition of Mr. Marlinga's affidavit to the record certainly sheds some light on his decision to present the entrapment defense, but Brazil has had no opportunity to cross-examine Mr. Marlinga to identify weaknesses in that decision. Although, admittedly, the evidence against Brazil was strong—even without Agent Bowden's testimony—Brazil will receive an opportunity to fully develop the record before his claim will be analyzed by the Court.

The government further argues that even if an evidentiary hearing is warranted, Mr. Minock's testimony should not be allowed because he "will not add any *facts* to the record" and his "opinions regarding whether Mr. Marlinga's decision to raise the entrapment defense was reasonable trial strategy are inadmissible legal conclusions." Resp't's Second Supp. Br. 9 (emphasis in original). Not so—federal courts have permitted lawyers to offer opinions during evidentiary hearings concerning the effective (or otherwise) assistance of counsel. *See*, *e.g.*, *Rayborn v. United States*, 489 F. App'x 871, 875 n.6 (6th Cir. 2012) (considering an attorney's testimony, offered at an evidentiary hearing, "that, in his expert opinion, the defense team's management of Rayborn's testimony at the second trial constituted ineffective assistance of counsel."). This Court has broad discretion concerning expert testimony, *see Fowler v. A.R. Jago*, 787 F.2d 589, at *5 (6th Cir. 1986), and in this instance, Mr. Minock's testimony will be

helpful in understanding whether Mr. Marlinga's defense of Brazil was ineffective, and if so, whether effective representation would have led to a different result.

IV

Accordingly, it is **ORDERED** that Brazil's motion to vacate, ECF No. 292, is **DENIED** as it relates to his claim of ineffective assistance of counsel for failure to raise the *Batson* challenge.

It is further **ORDERED** that an evidentiary hearing on Brazil's final remaining claim, ineffective assistance for asserting the entrapment defense, is **SCHEDULED** for **September 15, 2014** at **2:00 p.m.**[2]

Dated: June 27, 2014          s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 27, 2014.

s/Tracy A. Jacobs
TRACY A. JACOBS

---

[2] The government is reminded that it is responsible for ensuring Brazil's presence at this hearing.