UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff/Respondent,    Case No. 07-cr-20531

v.                Honorable Thomas L. Ludington

STANLEY BRAZIL,

       Defendant/Petitioner.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S AMENDED MOTION TO VACATE SENTENCE, GRANTING PLAINTIFF'S MOTION IN LIMINE, AND DENYING A CERTIFICATE OF APPEALABILITY AND PERMISSION TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

  Stanley Brazil is serving a 380-month sentence for distributing crack cocaine. On February 22, 2012, Brazil filed an amended motion to vacate his sentence under 28 U.S.C. § 2255. Although Brazil alleged numerous constitutional violations, *see* Pet'r's Am. Mot., ECF No. 292, each was rejected save two, *see* Oct. 1, 2013 Op. & Order 26, ECF No. 333. Brazil's remaining claims are as follows: (1) trial counsel was ineffective because he did not raise a *Batson* challenge during voir dire and appellate counsel was ineffective for failing to raise the issue on appeal; and (2) trial counsel was ineffective for presenting an entrapment defense at trial. *Id.*

**I.**

  The facts underlying Brazil's case have been set forth on numerous occasions. *See, e.g.*, *United States v. Brazil*, 395 F. App'x 205, 208–13 (6th Cir. 2010); Jan. 29, 2013 Report & Rec. 2–4, ECF No. 322; Oct. 1, 2013 Op. & Order 1–3, ECF No. 333. So only the facts necessary to this opinion will be reproduced here.

Brazil was charged, by indictment, with conspiring to distribute "50 grams or more of cocaine base, commonly known as crack cocaine," and two counts of knowingly distributing "50 grams or more of a substance containing cocaine base (crack cocaine) . . . ." Indictment 2, 10, 11, ECF No. 3. A first superseding indictment added additional counts against some of Brazil's nine co-defendants, but the three counts against him remained the same. *See* Super. Indictment 1–2, 10, 11, ECF No. 41. On September 15, 2008, the day before trial, the government moved to "dismiss Count one of the first superseding indictment"—the conspiracy count—"to narrow the issues presented at trial and conserve judicial resources." Resp't's Mot. Dismiss 1, ECF No. 166. The motion was granted, and Brazil proceeded to trial on charges that he unlawfully distributed more than 50 grams of crack cocaine on two separate occasions.

## A.

Brazil's trial began on September 16, 2008, with the selection of the jury. Brazil was represented at trial by Carl Marlinga. After each prospective juror was seated and questioned, the Court inquired if the government had any challenges "for cause." Voir Dire Tr. 61, ECF No. 334. The government had "[n]one." *Id*. The Court then moved to peremptory challenges. The government first asked that "Juror No. 1, Miss LaLonde" be excused. *Id*. at 61–62. The Court did so without objection. With its next peremptory challenge, the government asked the Court "to thank and excuse Juror No. 5, Mr. Mattson." *Id*. at 69. The Court then excused Mr. Mattson. With its third peremptory challenge, the government asked that "Juror No. 12, Miss Sanders" be excused. *Id*. at 76.

At that point, after the government exercised its third peremptory challenge on Miss Sanders, Mr. Marlinga (Brazil's counsel) requested a sidebar. Mr. Marlinga said that there was "only one African-American" member in Brazil's jury venire—Miss Sanders—and she was

"excused in a peremptory challenge." *Id.* at 77. Mr. Marlinga indicated he was "concerned" that the only minority member of the venire was excused in this manner, and he wanted "to note [his] objection." *Id*.

The Court then asked the government to explain "the exercise of [its] peremptory" challenge on Miss Sanders. Counsel for the government explained, "[s]he said she was very close to her brother and she didn't agree with drug penalties." *Id*. Miss Sanders's brother was "incarcerated" by the State of Michigan due to drug offenses. *Id*. at 26. After a short recess, the Court summarized the issue:

> Just to sum up, we had a challenge based on the fact we had a single African-American party that was seated on the jury. Indeed, it was a single African-American on the panel. The government has exercised a peremptory. The challenge has been made by the defense, and I think the present showing has been at least established under the *Batson* procedure by the offering of the objection. The government's response has offered a racially-neutral justification for the exercise of the peremptory. . . . So in that respect, I believe the gentleman has offered a racially-neutral explanation for the exercise of the peremptory challenge and I would respectfully overrule the challenge.

*Id*. at 79–80. After the Court overruled Mr. Marlinga's objection, Miss Sanders was excused. *Id*. at 80.

The government asked that the next juror seated be excused for cause, and when Mr. Marlinga raised no objections, the juror was excused. *Id*. at 94. The government used two more peremptory challenges to excuse potential jurors "Mr. Battle" and "Mr. Piontkowski." *Id*. at 104, 109. At that point, the government was "satisfied with the panel." *Id*. at 116. Because Mr. Marlinga and Brazil were also "satisfied with this jury[,]" voir dire concluded. *Id*. Brazil's Batson claim, after additional briefing, was denied on June 27, 2014. June 27, 2014 Op. & Order, ECF No. 362.

- 3 -

**B.**

During Brazil's trial, on cross examination of the government's third witness (ATF Agent Tom Bowden), Mr. Marlinga, without admitting that Brazil had committed a crime, asserted "that Brazil would never have engaged in any criminal activity had the police not sought to entrap him." *Brazil*, 395 F. App'x at 211. Of course, this entrapment line of inquiry "opened the door for the government to demonstrate that Brazil was predisposed to commit the crime of drug trafficking. [Mr. Marlinga] acknowledged as much, stating: 'I know I've opened up the door to other information that the agent may have about Mr. Brazil and drug dealing.' " *Id.* (citation omitted). Accordingly, on redirect examination, Bowden testified regarding Brazil's role in a Saginaw gang known for drug trafficking (the Sunnyside Gang).

An Evidentiary Hearing was held on September 15, 2014 regarding the propriety of Mr. Marlinga's use of the entrapment defense. During the hearing Mr. Marlinga was examined by Brazil's current counsel and by the government. Brazil also called an expert witness, attorney John Minock, over the objections of the government. Mr. Minock was cross-examined by the government regarding his opinion that Mr. Marlinga's decision to employ the entrapment defense was unreasonable. Following the hearing, the parties were directed to submit one final set of supplemental briefs, both of which were timely filed. *See* Supp. Brs., ECF Nos. 377-78.

**II.**

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the familiar *Strickland* standard by demonstrating that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The Court must "indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable

- 4 -

professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged conduct might be considered sound . . . strategy." *Id.* at 689. In assessing deficient performance, "reviewing courts must take care to avoid 'second-guessing' strategic decisions that failed to bear fruit." *Lundgren v. Mitchell*, 440 F.3d 754, 769–70 (6th Cir. 2006) (quoting *Strickland*, 466 U.S. at 689). And, importantly, even if a petitioner shows counsel's performance was deficient, he must then demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result . . . would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

When attacking the performance of trial counsel, a petitioner must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Sanders v. Curtin*, No. 11-1712, 2013 WL 3214962, at *12 (6th Cir. June 26, 2013) (quoting *Kinnard v. United States*, 313 F.3d 933, 935 (6th Cir. 2002)). In other words, this Court "should look to whether the seriousness of counsel's errors deprived the defendant of a fair trial." *Sanders*, No. 11-1712, 2013 WL 3214962, at *12 (citing *Kinnard*, 313 F.3d at 935). "A court is free to 'dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice,' as opposed to first determining whether counsel's performance was deficient." *Sanders*, No. 11-1712, 2013 WL 3214962, at *12 (quoting *Strickland*, 466 U.S. at 697).

### III.

Traditionally, an examination of the possible ineffectiveness of counsel is the first step in the Strickland inquiry. This first step usually involves an evidentiary hearing "to ascertain whether counsel's conduct was motivated by sound strategy." *United States v. Brazil*, 395 F.

App'x 205, 220 (6th Cir. 2010) (citing *United States v. Warman*, 578 F.3d 320, 348 (6th Cir. 2009)). While a court can dispose of an ineffective assistance claim without an evidentiary hearing if there is insufficient prejudice, *Sanders*, No. 11-1712, 2013 WL 3214962, at *12, holding an evidentiary hearing in the present case was appropriate following the appeal. While the case was the before the Sixth Circuit Brazil argued his claim of ineffective assistance of counsel. The government, however, responded that it was premature to address the ineffective assistance claim without an evidentiary hearing on the issues underlying the claim. Br. for Appellee at 23-24, *Brazil*, 395 F. App'x 205. The Sixth Circuit agreed that raising the issue was premature and should wait, citing to the "general rule [that] defendant[s] may not raise ineffective-assistance-of-counsel claims for the first time on direct appeal, since there has not been an opportunity to develop and include in the record evidence bearing on the merits of the allegations." *Brazil*, 395 F. App'x at 220 (quoting *United States v. Warman*, 578 F.3d 320, 348 (6th Cir. 2009)).

An evidentiary hearing was held on September 15, 2014. Nothing presented during that hearing developed the record in a way that was inconsistent with the Court's prior understanding of facts surrounding Mr. Marlinga's representation of Brazil. As a result, nothing from the hearing prevents the disposition of Brazil's claim on the ground that he has failed to allege sufficient prejudice. The Sixth Circuit noted that there was "overwhelming evidence of Brazil's guilt[.]" *Brazil*, 395 F. App'x at 217. Importantly, the facts recited by the Sixth Circuit that constituted this "overwhelming evidence" did not include any reference to the propensity evidence that was introduced as a result of Mr. Marlinga employing the entrapment defense. *Id*.

Brazil, in his supplemental brief following the evidentiary hearing, alleges that he was prejudiced by the damaging propensity evidence that was elicited at trial. But aside from the

1:07-cr-20531-TLL-PTM   Doc # 379   Filed 02/05/15   Pg 7 of 28   Pg ID 3065

conclusory statement that this evidence caused him prejudice, Brazil does not show that "there is a reasonable probability that, but for [Mr. Marlinga's] unprofessional errors, the result . . . would have been different" in his case. *Strickland*, 466 U.S. at 694. Brazil claims that he "need not show that the outcome . . . of this case was, more likely than not, affected by trial counsel's unreasonable decision to raise the entrapment defense." ECF No. 377. But, allowing for the slight difference in the linguistic formulation of the standard, that is exactly what he must show under *Strickland*. Because Brazil cannot plausibly allege that the outcome of his trial would have been different had Mr. Marlinga not employed the entrapment defense, his ineffective assistance claim will be denied and his petition dismissed.

**IV.**

Even though Brazil has failed to show how any alleged ineffectiveness on the part of Mr. Marlinga prejudiced him, the ineffectiveness prong of his claim will be analyzed for the sake of completeness.

**A.**

Before proceeding to the merits of Brazil's ineffective assistance claim, the substantive law underlying his claim must be addressed. Brazil contends that his attorney, Mr. Marlinga, was ineffective for raising the entrapment defense. Brazil's argument runs, in the main, that Mr. Marlinga should have been aware that raising the entrapment defense would have resulted in the introduction of propensity evidence; that propensity evidence was sufficiently devastating to Brazil's case that a reasonably competent attorney would not have introduced the entrapment defense knowing that that evidence would also come in at trial.

But Brazil, as reflected in his briefs and in his questioning during the evidentiary hearing, conflates a number of terms and inquiries that relate to specific legal theories and defenses.

- 7 -

Federal law recognizes a number of different defenses which can all, in some form, be styled as a type of government entrapment. *See United States v. Al-Cholan*, 610 F.3d 945, 949-50 (6th Cir. 2010) (outlining different forms of entrapment-style defenses). Mr. Marlinga, at trial, employed three of these tactics. During the course of the trial Mr. Marlinga elicited testimony in support of a traditional entrapment defense and then successfully submitted the Sixth Circuit pattern instruction on entrapment to the jury. Mr. Marlinga also moved at the end of trial, outside the presence of the jury, for a directed verdict on entrapment as a matter of law and on the defense of outrageous conduct.

Brazil claims that Mr. Marlinga's use of the entrapment defense violated his Sixth Amendment rights for five reasons, among many other claims of error to be discussed *infra*. First, "as part of his decision to raise the entrapment defense, trial counsel was wrong as a matter of law that the 6th Circuit recognized an 'outrageous conduct' defense[.]" ECF No. 377 at 3.[1] Second, "even if such a [sic] outrageous conduct defense exists in the 6th Circuit, such an argument raises due process concerns that should be raised pretrial[.]" *Id*. Third, "as part of his decision to raise the entrapment defense, Mr. Marlinga misunderstood the law of entrapment in the 6th Circuit to the extent he believed that entrapment was available based on quantity as a defense to the charge[.]" *Id*. Fourth, "as part of his decision to raise the entrapment defense, trial counsel incorrectly believed that the entrapment defense was available in the 6th Circuit for a person who had willingly committed similar acts to the charged offense in the past but had

---

[1] Throughout his papers and during the evidentiary hearing on his claim Brazil and his counsel often use the phrase "as a matter of law." The use of this phrase is misleading, however, since the term "as a matter of law" carries specific legal implications, generally related to a matter that is purely legal in form and can be decided without the aid of a fact-finder. In fact, there are issues related to entrapment that can be decided "as a matter of law" as opposed to being submitted to the jury for a factual determination as to whether entrapment occurred. Brazil and his counsel do not intend such a meaning when they use the term "as a matter of law." Rather, they intend to explain that Mr. Marlinga had a misunderstanding of the prevailing law of entrapment in the Sixth Circuit. So, for example, when Brazil contends that "trial counsel was wrong as a matter of law that the 6th Circuit recognized an 'outrageous conduct' defense[,]" ECF No. 377 at 3, he means to say "trial counsel's understanding that the Sixth Circuit recognized an 'outrageous conduct' defense was not a correct understanding of the law."

recently decided to stop that criminal activity[.]" *Id.* at 3-4. Fifth, and finally, "the entrapment defense is rarely raised because it always opens the door to propensity [evidence] and the law requires that the person not have any predisposition whatsoever to commit the crime[.]" *Id.*

In essence, Brazil's claims about Mr. Marlinga's approach to the entrapment defense boil down to a single proposition: that Mr. Marlinga so misunderstood the state of the law regarding entrapment that he failed to provide the sort of legal assistance contemplated by the Sixth Amendment. As discussed below, however, it is Brazil's understanding of entrapment law that is flawed. While Mr. Marlinga's decision to employ the entrapment defense may have been tactically unwise (and, indeed, potentially so unwise that it rose to the level of constitutional ineffectiveness, a point discussed *infra* § IV.B) his understanding of the law of entrapment in the Sixth Circuit was sound.

### 1.

One form of an entrapment-style defense, and one raised by Mr. Marlinga on behalf of Brazil at trial, is generally referred to as the "outrageous government conduct" defense. *See United States v. Al-Cholan*, 610 F.3d 945, 952 (6th Cir. 2010). Unlike traditional entrapment, which is purely statutory,[2] the outrageous government conduct defense is constitutionally grounded in the due process clause. *Id.* at 949-50. "The Supreme Court has never applied this constitutional variant of entrapment, but has suggested in dictum that it may be available in extreme situations where '[t]he law enforcement conduct . . . [is] shocking to the universal sense

---

[2] Traditional entrapment was first recognized in *Sorrells v. United States*. 287 U.S. 435, 448 (1932). The Supreme Court recognized entrapment "as a matter of statutory interpretation" of the Federal Criminal Code. *Al-Cholan*, 610 F.3d at 950. Specifically, the Supreme Court "reason[ed] that it was not the intention of the Congress in enacting the Prohibition act that the statute be used to prosecute otherwise innocent persons lured into violating it by law-enforcement agents." *Id.* (internal quotation marks and emendations omitted). "In subsequent decisions, the Court has recognized that the *Sorrells* entrapment defense is generally available under other provisions of the federal criminal code, while noting that the defense is 'not of a constitutional dimension.'" *Id.* (quoting *United States v. Russell*, 411 U.S. 423, 433 (1973)).

of justice[.]'" *Al-Cholan*, 610 F.3d 945, 952 (6th Cir. 2010) (quoting *United States v. Russell*, 411 U.S. 423, 431–32 (1973)). The Sixth Circuit, similarly, has never applied the defense and has gone so far as to indicate that "there are . . . strong reasons for concluding that such a defense simply does not exist[.]" *United States v. Tucker*, 28 F.3d 1420, 1427 (6th Cir.1994). But in spite of this warning, the Sixth Circuit has recognized that the defense has at least a theoretical place in the firmament of defenses available in a criminal proceeding, even if "in practice, courts have rejected its application with almost monotonous regularity." *See Al-Cholan*, 610 F.3d at 952 (quoting *United States v. Santana*, 6 F.3d 1, 4 (1st Cir.1993)).

Thus, Brazil's claim that Mr. Marlinga had an incorrect understanding of the status of the outrageous conduct defense in the Sixth Circuit is inaccurate. ECF No. 377 at 3. It is correct to say that the outrageous conduct defense is exceedingly hard to prove and is rarely deployed by defense attorneys. This Court is unaware of any authority, however, that supports the claim that the Sixth Circuit does not recognize the defense and Brazil marshals no such authority. While the low probability that the defense might be accepted, weighed against the risks of its use, may be a valid ground on which Brazil's ineffectiveness claim may stand, the assertion that Mr. Marlinga misunderstood Sixth Circuit law is not such a ground.

**2.**

The next form of an entrapment-style defense which Mr. Marlinga used at trial was a theory of entrapment as a matter of law. This defense is identical to the traditional entrapment defense but permits the court to make a determination, independent of the jury, that entrapment actually occurred. *See Sherman v. United States*, 356 U.S. 369, 373 (1958). It can be error for a judge to submit the question of entrapment to the jury where "the facts pertaining to that issue are not in real dispute." *Id*. Entrapment as a matter of law has been adopted by the Sixth Circuit

- 10 -

from *Sherman*. *United States v. Hodge*, 539 F.2d 898, 906 (6th Cir.) (quoting *United States v. Ambrose*, 483 F.2d 742, 746 (6th Cir.1973)). "[A]lthough entrapment usually presents a jury question, such a defense may be established as a matter of law where the government presents no evidence to meet its burden of proving disposition or readiness beyond a reasonable doubt." *United States v. McLernon*, 746 F.2d 1098, 1111 (6th Cir. 1984) holding modified by *United States v. Damra*, 621 F.3d 474 (6th Cir. 2010) (citing *United States v. Jones*, 575 F.2d 81, 84 (6th Cir.1978)).

Proving disposition or readiness involves the introduction by the government of "some evidence from which a jury could conclude that the defendant was predisposed to break the law before he received the opportunity afforded by government agents." *McLernon*, 746 F.2d at 1111. Introducing such evidence defeats a claim for entrapment as a matter of law (or, if the evidence is sufficiently weighty, establishes as a matter of law that entrapment did not occur) and submits the question to the jury. *Id*. The evidence introduced generally takes the form of prior crimes, wrongs, or acts consistent with the offense charged.

The mere introduction of such evidence does not, as Brazil contends, preclude a court from determining, as a matter of law, that the defendant was entrapped. To overcome a claim of entrapment as a matter of law the government must introduce some evidence that "prov[es] disposition or readiness beyond a reasonable doubt." *Id*. The government may introduce evidence of disposition or readiness but still fail to meet the burden set forth in *McLernon*. Admittedly, the burden of presenting the entrapment question to the jury is low, requiring only some evidence. As a result, the situations where the government fails to produce any evidence of disposition or readiness will be rare, and the situations where the government does produce

- 11 -

evidence of disposition or readiness but fails to meet the 'some evidence' standard will be even rarer.

But this does not mean, as Brazil asserts, that the introduction of evidence of predisposition by the government precludes a finding of entrapment as a matter of law. Contrary to Brazil's position, this exact circumstance presented itself in *Sherman*. There, the government countered a claim of entrapment with evidence of the defendant's prior narcotics convictions. *See Sherman v. United States*, 356 U.S. 369, 375 (1958). As the Sixth Circuit explained in analyzing *Sherman*:

> Despite such evidence of prior involvement with narcotics, the Supreme Court found unsupported the government's claim that the defendant was predisposed to violate the narcotics laws. The Court discovered "no evidence that petitioner himself was in the trade," and declared insufficient to establish a predisposition evidence that the defendant had previously been convicted of the sale and possession of narcotics. The Court, therefore, reversed the jury's finding that the defendant had not been entrapped.

*McLernon*, 746 F.2d at 1111 (internal citations omitted).

Brazil's claim to the contrary, that "trial counsel incorrectly believed that the entrapment defense was available in the 6th Circuit for a person who had willingly committed similar acts to the charged offense in the past but had recently decided to stop that criminal activity[,]" ECF No. 377 at 3-4, is not accurate. The Supreme Court spoke against this position nearly fifty years ago when it decided that "a nine-year-old sales conviction and a five-year-old possession conviction are insufficient to prove petitioner had a readiness to sell narcotics at the time [a government agent] approached [the defendant.]" *Sherman*, 356 U.S. at 375.

It goes without saying, then, that if evidence of predisposition that has grown stale with the passage of time can be insufficient to overcome a claim of entrapment as a matter of law a jury can likewise make a finding of traditional entrapment in the face of such evidence. Thus, Brazil's further claim that "the entrapment defense is rarely raised because it always opens the

door to propensity defense [sic] and the law requires that the person not have any predisposition whatsoever to commit the crime[,]" ECF No. 377 at 4, also misstates the law. Nevertheless, the law on traditional entrapment in the Sixth Circuit will be examined next and Brazil's claims addressed more specifically.

**3.**

The final entrapment-style defense employed by Mr. Marlinga on behalf of Brazil was the traditional defense of entrapment. Getting the issue of entrapment in front of the jury was Mr. Marlinga's primary tactical objective.[3] Entrapment was first recognized by the Supreme Court in *Sorrells v. United States*, 287 U.S. 435 (1932). "In subsequent decisions, the Court has recognized that the *Sorrells* entrapment defense is generally available under other provisions of the federal criminal code[.]" *Al-Cholan*, 610 F.3d at 950; *see Sherman*, 356 U.S. 369 (applying the entrapment defense to narcotics offenses).

The Sixth Circuit has explained the type of activity with which the entrapment defense is concerned as "whether law enforcement officials implanted a criminal design in the mind of an otherwise law-abiding citizen or whether the government merely provided an opportunity to commit a crime to one who was already predisposed to do so." *United States v. Pennell*, 737 F.2d 521, 534 (6th Cir.1984). "Thus, '[a] valid entrapment defense requires proof of two elements: (1) government inducement of the crime, and (2) lack of predisposition on the part of the defendant to engage in the criminal activity.'" *Al-Cholan*, 610 F.3d at 950 (6th Cir. 2010)

---

[3] Establishing a basis to submit a motion for a directed verdict on the basis of an outrageous conduct defense or entrapment as a matter of law was not Mr. Marlinga's main goal. While Mr. Marlinga did make both such motions they were made outside the presence of the jury and were secondary to his primary aim of giving the jury an entrapment instruction. Thus, Mr. Marlinga wanted to present to the jury a basis for acquittal by arguing that Brazil no longer dealt drugs and was led into the charged exchanges solely by government inducement. Mr. Marlinga would not have independently laid the groundwork for outrageous conduct and entrapment as a matter of law defenses. These motions were only incidents to his primary strategic effort and, even if they were of doubtful merit, they could only redound to his client's benefit since they would not harm Brazil in the eyes of the jury—the jury was not even aware the motions were filed. ECF No. 372 at 60-64.

(quoting *United States v. Khalil,* 279 F.3d 358, 364 (6th Cir. 2002)). The Sixth Circuit has also

outlined the following factors that are relevant to a determination that a defendant had a

predisposition to commit the offense in question:

> [t]he character or reputation of the defendant, including any prior criminal record; whether the suggestion of the criminal activity was initially made by the Government; whether the defendant was engaged in criminal activity for profit; whether the defendant evidenced reluctance to commit the offense, overcome only by repeated Government inducements or persuasion; and the nature of the inducement or persuasion supplied by the Government.

*United States v. Moore,* 916 F.2d 1131, 1137 (6th Cir.1990) (quoting *United States v. McLernon,*

746 F.2d 1098, 1112 (6th Cir.1984)).

Brazil makes much of Mr. Marlinga's apparent unfamiliarity with federal entrapment

law. During the evidentiary hearing Brazil made specific note of the fact that Mr. Marlinga

practiced primarily in state court and that his defense of Brazil was Mr. Marlinga's first federal

criminal trial since 1985. ECF No. 372 at 13-14. This led Brazil to claim, in part, that:

> Mr. Marlinga misunderstood the law of entrapment in the 6th Circuit to the extent he believed that entrapment was available based on quantity as a defense to the charge[,] . . . trial counsel incorrectly believed that the entrapment defense was available in the 6th Circuit for a person who had willingly committed similar acts to the charged offense in the past but had recently decided to stop that criminal activity[,] . . . [and] the entrapment defense is rarely raised because it always opens the door to propensity defense and the law requires that the person not have any predisposition whatsoever to commit the crime[.]

ECF No. 377 at 3-4. More simply put, Brazil levies two charges against Mr. Marlinga: (1) that

the Sixth Circuit does not recognize entrapment as to amount and (2) that a finding of entrapment

in the Sixth Circuit is precluded by the introduction of propensity evidence.

**i.**

Brazil's first contention must be clarified: that the Sixth Circuit does not recognize

entrapment as to amount. As a general matter, Brazil is correct. The Sixth Circuit does not

recognize claims of "sentencing entrapment." *See, e.g.*, *United States v. Nanez*, 168 F. App'x 72,

77 (6th Cir. 2006) (declining to recognize sentencing entrapment). The upshot of a sentencing entrapment claim is the argument that the court should depart downward from the recommended guideline range because the defendant was not predisposed to deal in such high quantities (or number of transactions) and would not have done so but for opportunities presented by the government. *See United States v. Jones*, 102 F.3d 804, 809 (6th Cir. 1996). But that was not Mr. Marlinga's argument regarding Brazil being entrapped. Rather, Mr. Marlinga argued to the jury that they should at least acquit on the greater charge because Brazil never dealt in such high quantities prior to being contacted by a government agent. ECF No. 241 at 70*ff*. Mr. Marlinga was replaced as Brazil's counsel prior to sentencing and so never argued for a downward departure on the basis of quantity.

The issue of whether the Sixth Circuit recognizes entrapment as to amount when specific amount-dependent counts are being argued before the jury is a more acute inquiry. While not unrelated, the quantity entrapment defense Mr. Marlinga utilized in arguments before the jury asked that the jury return a verdict on a lesser included charge because Brazil was entrapped as to the amounts that would substantiate a conviction on the greater charge. That is: Brazil was not predisposed to deal in quantities greater than fifty grams, so the jury should return a verdict on the lesser charge of dealing five to fifty grams. The Court is aware of no authority in the Sixth Circuit that bars the use of such a defense or that extends the bar on sentencing entrapment to such arguments.

This form of "offense-level entrapment," as it will be styled, has been recognized in other circuits. *See United States v. Khamsomphou*, 111 F. App'x 937, 939 (9th Cir. 2004) ("The jury could easily have found that even though Khamsomphou was entrapped into attempting to murder Chanthaseng, she had still plotted to harm Chanthaseng before the government became

involved."), *United States v. Thacker*, 829 F.2d 1121 (4th Cir. 1987) (admitting the possibility of providing a lesser-included instruction where sufficient evidence of entrapment is presented as to the charged count); *but see United States v. James*, 257 F.3d 1173, 1184 (10th Cir. 2001) (holding that the defendant, who raised the entrapment defense, was not entitled to a lesser included instruction because entrapment is a complete defense).[4] In light of this authority, it was not against Sixth Circuit law on entrapment for Mr. Marlinga to argue that the jury should return,

---

[4] The Tenth Circuit, in *James*, cites to the prior decision of *United States v. Martinez*, 979 F.2d 1424, 1433 (10th Cir. 1992). *James*, 257 F.3d at 1184 ("In *Martinez*, we held that a defendant who raises an entrapment defense to the charged offense is not entitled to a lesser included offense instruction because the defendant cannot satisfy the last element of the four-part *Joe* test."). In *Martinez*, the Tenth Circuit wrote: "Because entrapment is a complete defense, *United States v. McLernon*, 746 F.2d 1098, 1109–10 (6th Cir.1984), the jury's acquittal on the charged offense would not have permitted it to consider the lesser offense." *United States v. Martinez*, 979 F.2d 1424, 1433 (10th Cir. 1992). The citation to *McLernon* is of interest. *McLernon*, however, does not, to this Court's reading, support the proposition that lesser included offenses cannot be considered where a defense of entrapment is raised by a defendant. *McLernon* reiterates the time-worn proposition that a review of a jury's charge must be wholesome and done "in its entirety and not on a sentence by sentence basis." *McLernon*, 746 F.2d at 1109 (quoting *United States v. Smith*, 584 F.2d 759, 763 (6th Cir.1978)) (internal quotation marks omitted).

*James* and *Martinez* are distinguishable, though. In both cases the question that reached the Tenth Circuit was whether or not the trial court erred in denying the defendants request for a lesser-included charge because the defendant had advanced the entrapment defense. In both cases it was deemed not to be error. As noted above, the *Martinez* court appeared to go further and foreclose the possibility of arguing entrapment as to a specific offense level. Tenth Circuit precedent, however, cautions against such a strict reading of *Martinez*. In *United States v. Rodriguez-Garcia*, 983 F.2d 1563 (10th Cir. 1993), the Tenth Circuit indicated that it is possible for a defendant to be deserving of a lesser-included instruction but the inquiry is factual:

> In the instant case, the district court instructed the jury on the affirmative defense of entrapment, indicating that the burden rested with the government to prove that Rodriguez was not entrapped. An instruction on the lesser-included offense was not supported by the evidence, since such instruction is warranted only if a rational jury could convict of the lesser offense and acquit of the greater. *United States v. Lajoie*, 942 F.2d 699, 701 (10th Cir.), *cert. denied*, 502 U.S. 919, 112 S.Ct. 328, 116 L.Ed.2d 268 (1991). Here, a rational jury could not infer that Rodriguez was simply in possession of the drugs for personal use. He was attempting to sell drugs to Huaro and possessed three kilograms of cocaine at more than $600,000 and twenty pounds of marijuana. We hold that the district court did consider Rodriguez' proffered instructions but rejected them due to their inapplicability or redundancy. No reversible error was committed.

*Id.* at 1572.

The lesson for Brazil's case is two-fold. First, because the jury was already to be instructed on lesser-included offenses, it was not against the prevailing weight of authority for Mr. Marlinga to argue that Brazil was entrapped as to a greater amount. Second, even if the jury in Brazil's case did not receive instructions on lesser-included charges, such an instruction is not automatically barred whenever a defendant argues that he was entrapped, instead the inquiry is a fact-dependent one that turns on the evidence adduced at trial. Thus, if the jury was not presented with a lesser-included instruction Brazil could still have garnered such an instruction despite introducing the entrapment defense.

- 16 -

at a minimum, a verdict on a lesser-included offense because Mr. Brazil was entrapped into dealing amounts greater than fifty grams.

**ii.**

Brazil's next claim—that Mr. Marlinga was mistaken as to Sixth Circuit law—is similar to one previously discussed: that the Sixth Circuit does not permit a finding of entrapment in the face of any evidence of predisposition.

There are two recognized forms of entrapment "both of which originate with the Supreme Court's decision in *Sorrells*[.]" *Sosa v. Jones*, 389 F.3d 644, 647 (6th Cir. 2004). Courts in this country recognize both a subjective and objective theory of entrapment. "The 'subjective' theory of entrapment focuses on the predisposition of the defendant and is the formulation of the defense adopted by the federal courts." *Id*. "The 'objective' theory of entrapment focuses on the conduct of the government, rather than individual predisposition[.]" *Id*. "Michigan has adopted the objective theory of entrapment." *Id*. (citing *People v. Juillet*, 475 N.W.2d 786, 792-93 (Mich. 1991)).

Under the subjective theory of entrapment, after the defense of entrapment is introduced "the government must prove beyond a reasonable doubt that the defendant was predisposed to commit the crime." *Sosa*, 389 F.3d at 647 (citing *Jacobson v. United States*, 503 U.S. 540, 548-49 (1992)). By contrast, no showing of predisposition is necessary under the objective theory. *Sosa*, 389 F.3d at 647. The distinction between the two entrapment theories reveals that, although Mr. Marlinga was trying his first federal case after many years of trying state cases, he had no misunderstanding about the state of federal entrapment law. His acknowledgment on the record that raising the entrapment defense would allow for the introduction of propensity evidence

shows familiarity with the contours of the subjective theory of entrapment. ECF No. 239 at 56-64.

Another key distinction between the two theories of entrapment is the role that propensity evidence plays at trial. Mr. Marlinga exhibited awareness that propensity evidence was a part of federal law on entrapment but Brazil alleges that he did not exhibit awareness that propensity evidence is such an important part of the law that, if introduced, it precludes a the defense of entrapment altogether. The main defect in Brazil's claim is that, like his other legal claims, it incorrectly recites the state of federal law on entrapment.

Nothing in the law of entrapment in the Sixth Circuit suggests that the introduction by the government of evidence propensity precludes the jury from finding a defendant was entrapped. Rather, there are numerous cases (including Brazil's own) where the question of entrapment was properly submitted to the jury despite the presence of propensity evidence. *See, e.g.*, *United States v. Monea*, 376 F. App'x 531, 544-45 (6th Cir. 2010); *United States v. Lasuita*, 752 F.2d 249, 254 (6th Cir. 1985). Thus, the claim that the introduction of any propensity evidence would operate by force of law to preclude the finding of entrapment is incorrect.

Brazil's claim may be that no reasonable jury would return a verdict of acquittal on the basis of an entrapment defense in the face of propensity evidence. Analyzing the probability that this claim is correct would require proving a negative. Yet that analysis need not be undertaken. The Sixth Circuit has recognized that circumstances exist where "reasonable minds could differ over whether or not [a defendant is] predisposed to commit each of the offenses charged and [in those instances] the issue [is] properly left to the jury." *United States v. Burke*, 900 F.2d 260, *4 (6th Cir. 1990). Nothing has been furnished by Brazil that suggests the introduction of any propensity evidence is always fatal to a jury finding that a defendant was entrapped. Thus,

Brazil's failure-to-research claim does not succeed since nothing done by Mr. Marlinga during the course of trial was inconsistent with Sixth Circuit law.

**B.**

The remaining part of Brazil's ineffectiveness claim focuses on the soundness of introducing the entrapment defense at trial, regardless of whether the manner in which it was introduced was legally proper. Brazil's claim of ineffectiveness has four distinct prongs: (1) Mr. Marlinga failed to properly investigate the evidence around Brazil's case and so was unaware of the damaging impeachment testimony that could come in against Brazil; (2) Mr. Marlinga was inexperienced as a federal criminal defender and so had limited knowledge of and experience with the entrapment defense; (3) Mr. Marlinga failed to call witnesses in support of the entrapment defense; (4) Mr. Marlinga's primary aim in introducing the entrapment defense was an impeachment of Dancey's character and that could have been accomplished without relying on entrapment.

**1.**

Brazil claims that the primary strategic error made by Mr. Marlinga in deploying the entrapment defense was the large amount of damaging propensity evidence for which it opened the door. ECF No. 377 at 6. Brazil also makes the claim that Mr. Marlinga did not sufficiently investigate the existence of the propensity evidence and so was not aware of its possible damaging effects. This latter claim is contrary to the record, however. Mr. Marlinga stated on the record that he was aware of the possible consequences of raising the entrapment defense, but believed it to be Brazil's best chance at acquittal. *See* ECF No. 239 at 52-56; ECF No. 372 at 64.

Introducing past crimes or wrongs of a defendant does not per se render counsel ineffective. Indeed, while some courts have found that the introduction of past convictions is

- 19 -

unreasonable, *see Harding v. Sternes*, 380 F.3d 1034 (7th Cir. 2004), others have not, *see United States v. Rodriguez*, 675 F.3d 48 (1st Cir. 2012). Whether the introduction of a defendant's prior crimes, wrongs, or acts by defense counsel is unreasonable is a context-dependent inquiry. In *Harding*, the Seventh Circuit held that it was objectively unreasonable for trial counsel to raise his client's prior armed robbery conviction on redirect-examination of the defendant. What made this tactical decision particularly egregious was that defense counsel had just successfully objected to the introduction of the defendant's prior convictions during cross-examination by the prosecutor.

By contrast, in *Rodriguez*, the First Circuit found that a similar set of facts constituted reasonable trial strategy. The trial court in Rodriguez had ruled that the government could not introduce testimony from the defendant's girlfriend that the defendant had participated in an earlier robbery. Defense counsel, however, elicited the testimony from the girlfriend in an attempt to discredit her as a source of information for the government. The defendant, Rodriguez, claimed that introducing evidence of his robbery was ineffective. The First Circuit disagreed. They held that it was a reasoned tactical decision by defense counsel in an attempt to cast the government's primary source of information in a negative light before the jury.

Mr. Marlinga's case falls clearly to one side. Mr. Marlinga, like Rodriguez's counsel, was aware of the damaging evidence that could come in against Brazil and realized that it would not otherwise be admissible. He chose, however, to allow the testimony to come into evidence in an effort to make a larger strategic move: seek acquittal by entrapment. The introduction of damaging evidence—evidence otherwise inadmissible—was not the result of mistake or misadventure by Mr. Marlinga. Rather, it was a calculated attempt at securing acquittal which failed to bear fruit. The decision was not an unreasonable one.

- 20 -

**2.**

Brazil next claims that Mr. Marlinga was ineffective in introducing the entrapment defense because he was inexperienced as federal criminal defense counsel. This argument is a unique one. Surely, trial counsel cannot be ineffective merely because they are inexperienced. The opportunity costs of gaining experience as a criminal defense counsel would be too great if an attorney's initial representations exposed him or her to charges of ineffectiveness. The constitution requires something more before a defendant's right to reasonably competent representation is violated. *See United States v. Lewis*, 786 F.2d 1278, 1281 (5th Cir. 1986) ("An attorney can render effective assistance of counsel even if he has had no prior experience in criminal advocacy."). Brazil's claim must be not that Mr. Marlinga was ineffective because he was inexperienced but that he should have undertaken more extensive research on entrapment law to account for his relative inexperience.

Possible inexperience with criminal law does not alter the presumption of effectiveness that Mr. Marlinga enjoys. *Matter of Grand Jury Subpoena*, 739 F.2d 1354, 1358 (8th Cir. 1984) ("Unfamiliarity with an area of the law does not justify a presumption of ineffectiveness[.]"). In fact, "[w]hether the defendant has been afforded his right to counsel depends on whether the attorney is reasonably likely to render and does render reasonably effective assistance, not on whether counsel has an extensive background in criminal defense work." *United States v. Kelley*, 559 F.2d 399, 401 (5th Cir. 1977). In *United States v. Lewis*, 786 F.2d 1278 (5th Cir. 1986), the defendant challenged the effectiveness of his trial counsel. As grounds for this challenge the defendant claimed his attorney "was not admitted to practice in federal court, had only one year of experience practicing law, and was unfamiliar with local court rules and the Federal Rules of Evidence." 786 F.2d at 1281. The Fifth Circuit held, however, that counsel was not ineffective

solely because he was inexperienced. Specifically, the court stated that despite this inexperience and alleged unfamiliarity with relevant procedural rules, counsel did not commit any specific errors as a result of that unfamiliarity. *Lewis*, 786 F.2d at 1282. The same can be said here. Whatever Mr. Marglinga's experience with entrapment law was, it was not wrong. *See supra* § IV.A. Brazil's emphasis on Mr. Marlinga's purported inexperience as a ground of ineffectiveness is without merit.[5]

### 3.

Brazil's next claim is that Mr. Marlinga failed to call witnesses in Brazil's defense. At the outset it should be noted that this point appears inconsistent with what transpired at trial. Mr. Marlinga expressed his preference to call a witness, Demetrious Bryant, in Brazil's defense but Mr. Bryant's attorney asserted the Fifth Amendment privilege against self-incrimination on Mr. Bryant's behalf. ECF No. 372 at 55.

In any event, the failure to call witnesses is a purely tactical decision entrusted solely to the sound discretion of trial counsel's litigation strategy. *See, e.g.*, *Hale v. Davis*, 512 F. App'x 516, 521 (6th Cir.) *cert. denied sub nom. Hale v. Hoffner*, 134 S. Ct. 680, 187 L. Ed. 2d 553 (2013) (holding that decision not to call witness that could provide alibi evidence in murder prosecution was reasonable trial strategy); *McAleese v. Mazurkiewicz*, 1 F.3d 159, 167-68 (3d Cir. 1993) (same); *Minner v. Kerby*, 30 F.3d 1311, 1317 (10th Cir. 1994) (holding that not calling two witnesses favorable to the defendant who would offer testimony contradictory to a third witness that had already testified was not ineffective). Mr. Marlinga's decision not to call witnesses in Brazil's defense was not ineffective. Furthermore, as stated above, he attempted to

---

[5] It should be noted that Mr. Marlinga is far from inexperienced in the area of criminal law. He had years of experience as both a criminal defense attorney and prosecutor in both state and federal matters. *See* ECF No. 372 at 42-46. He has also taught undergraduate courses in law and advised law enforcement agencies on avoiding entrapment issues. *Id.*

call a witness to bolster the entrapment defense but that witness claimed his constitutional privilege against self-incrimination.

## 4.

Brazil's final claim is that Mr. Marlinga was ineffective because he introduced the entrapment defense to assail Dancey's character but that he did not need to raise the defense to do so. Once again, this point is refuted by the record. Mr. Marlinga stated at the evidentiary hearing that he introduced the entrapment defense partly to attack Dancey's character but mainly to give the jury something on which they could reasonably return an acquittal. ECF No. 372 at 77.[6] But putting Mr. Marlinga's claim aside, this objection reads as a summary of Brazil's ineffectiveness claim. Brazil asserts that Mr. Marlinga's introduction of the entrapment defense led to an accumulation of error that rendered his representation ineffective. This is the core of Brazil's ineffectiveness claim.

There is, of course, nothing per se ineffective about raising the entrapment defense. The inquiry for ineffectiveness when the entrapment defense is raised, or not raised, is a context specific one. *See United States v. Vegas*, 27 F.3d 773 (2d Cir. 1994), *West v. United States*, 631 F.3d 563 (1st Cir. 2011), *United States v. Lopeztegui*, 230 F.3d 1000 (7th Cir. 2000). For Brazil's purposes *Vegas* is particularly instructive. In that case, the Second Circuit held that it was not ineffective for defendant Vegas' counsel to introduce the entrapment defense as an argument for acquittal where there was videotaped evidence of the underlying offense. *Vegas*, 27 F.3d at 777-78. It was reasonable for Vegas' attorney not to contest his actual involvement in the offense but

---

[6] Following a line of question regarding his rationale for introducing the entrapment defense, Mr. Marlinga responded:

> Because if all you are leaving the jury with is the thought that Thomas Dancy [sic] is a bad guy and the government agents got snookered into setting up this transaction, the jurors are still going to get jury instructions which say, you know, did Mr. Brazil do this or not.

*Id.*

instead to focus on whether Vegas was entrapped by a friend who he was unaware was cooperating with authorities. *Id*. at 778.

By contrast, in *West*, the defendant claimed that his counsel was ineffective for not presenting an entrapment defense. The First Circuit held, however, that the decision of West's counsel not to pursue the entrapment defense was reasonable. *West*, 631 F.3d at 567-68. The entrapment defense would have allowed the admission of evidence of West's past convictions for selling illegal drugs. *Id*. But the court also noted that West's own actions and statements, which were admitted into evidence at trial, revealed "a ready knowledge of current cocaine pricing [and] . . . suggested an ongoing relationship [with a drug supplier.]" *Id*. This latter evidence "provided an additional challenge to West's claim that his drug procurement was a government-induced, one-time event." *Id*. West's counsel, in light of these difficulties, "struck a middle path" and focused on the cooperation of West's purchaser rather than introduce entrapment. *Id*. "That [West's counsel's] strategy failed demonstrate[d] the strength of the government's case, not the weakness of counsel's performance." *Id*.

While Brazil's case falls somewhere between *Vegas* and *West*, neither case supports a finding that Mr. Marlinga's actions at trial were unreasonable. If anything, *Vegas* instructs that employing an entrapment defense where there is overwhelming evidence of guilt that includes videotaped transactions is a reasonable tactical decision. Brazil has not provided any authority to support a contrary holding.

Brazil argues, instead, that the introduction of propensity evidence, through the use of the entrapment defense, was unreasonable. ECF No. 377 at 6. For this argument Brazil relies primarily on two circuit court cases: *Ward v. United States*, 995 F.2d 1317 (6th Cir. 1993), and *Berryman v. Morton*, 100 F.3d 1089, 1095 (3d Cir. 1996). Reliance on these two cases is

- 24 -

misplaced, however. *Ward* is particularly inapposite to Brazil's case. In *Ward*, defense counsel purposefully elicited damaging character evidence on cross-examination without any trial strategy supporting his decision to do so. 995 F.2d at 1318-19. Defense counsel in Ward displayed an astonishing disregard for the damage that eliciting the character evidence would wreak. *Id*. Defense counsel forged a path to the damaging evidence through the warnings of both government counsel and the judge. *Id*. at 1322. In Brazil's case, Mr. Marlinga was acutely aware of the evidence that was to come in against his client and explained during the evidentiary hearing how that evidence of prior drug transactions actually fit within his trial strategy. ECF No. 239 at 52-56. Mr. Marlinga was attempting to show that Brazil exited the business of drug distribution and only engaged in the transactions at issue because of extensive coaxing by a government agent. ECF No. 372 at 56-64.

*Berryman*, similarly, does not apply to the facts of Brazil's case. In *Berryman*, the defendant's ineffective assistance claim was heard by both a state appellate court and a district court before reaching the Third Circuit. *Berryman*, 100 F.3d at 1093. While the state appellate court held that defense counsel's strategy was reasonable, the district court hearing his § 2254 petition and the Third Circuit held it was not. The Third Circuit noted that "[t]he district court's thoughtful and thorough opinion can be interpreted as holding that trial counsel had no trial strategy at all. However, it can also be read as concluding that counsel did have a strategy, but the state court erred in holding that it was reasonable." *Id*. at 1095. To the extent *Berryman* addresses the performance of a defense attorney who admitted propensity evidence without a guiding trial strategy; it is indistinguishable from *Ward* and, as a result, inapposite to Brazil's case.

- 25 -

Reading *Berryman* as a decision concerning a defense attorney who had a strategy, albeit an unreasonable one, makes its application to Brazil's case more complicated. The fact that the Third Circuit was two levels removed from the subject of their review allowed them to consider the defendant's ineffectiveness claim under a factual alternative wherein defense counsel had a trial strategy when he elicited the damaging testimony. That is: the Third Circuit was able to alternatively hold that even if Berryman's counsel had a strategy, the state appellate court erred in deciding that it was a reasonable strategy. Brazil's case does not permit such a holding for two reasons. First, the elicitation of propensity evidence (or allowing its elicitation by the government) was an integral part of Mr. Marlinga's trial strategy. Second, having already held that it was reasonable for Mr. Marlinga to employ the entrapment defense, holding that allowing in propensity evidence was unreasonable would be a contradiction.

The *Berryman* court, however, appears to solve this dilemma by holding that "the state court's . . . conclusion that Mr. Berryman's trial attorney did have a trial strategy is not supported by the record." *Id.* at 1095. As explained, Mr. Marlinga's approach to Brazil's trial contrasts starkly with these facts. Mr. Marlinga had developed and considered a trial strategy which he continued to develop, albeit with no success, at trial. He was also acutely aware of the adverse effects that would flow from his use of the entrapment defense. Thus, the use of the entrapment defense by Mr. Marlinga and the propensity evidence that came in as a result of employing that defense was not ineffective.

## V.

Next, prior to the evidentiary hearing the government filed a motion *in limine* which is still outstanding. ECF No. 363. The motion asserted that Brazil, as a result of his ineffective assistance of counsel claim, had waived his attorney-client privilege with Mr. Marlinga to the

extent it covered communications regarding the entrapment defense. *Id*. At the hearing Brazil conceded that the privilege was waived for communications related to the entrapment defense. ECF No. 372 at 56-57. For that reason, the motion will be granted to reflect its disposition at the hearing.

## VI.

Before Brazil may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(B); FED. R. APP. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id*. at 336–37. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2255 Proceedings, Rule 11, 28 U.S.C.A. foll. § 2255.

Having considered the matter, the Court concludes that Brazil cannot make a substantial showing of the denial of a constitutional right. A certificate of appealability is not warranted in this case. The Court will also deny Petitioner permission to proceed on appeal *in forma pauperis*. *See Foster v. Ludwick*, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002); 28 U.S.C. § 1915(a)(3); FED. R. APP. P. 24 (a).

**VII.**

Accordingly, it is **ORDERED** that Defendant/Petitioner Brazil's Amended Motion to Vacate Sentence, ECF No. 292, is **DENIED**.

It is further **ORDERED** that Plaintiff/Respondent's motion *in limine*, ECF No. 363, is **GRANTED**.

It is further **ORDERED** that a certificate of appealability is **DENIED**.

It is further **ORDERED** that permission to proceed *in forma pauperis* on appeal is **DENIED**.

Dated: February 5, 2015                                         s/Thomas L. Ludington
                                                               THOMAS L. LUDINGTON
                                                               United States District Judge

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 5, 2015.

s/Tracy A. Jacobs
TRACY A. JACOBS

---